¶ 62.
SHIRLEY S. ABRAHAMSON, J.
{concurring in part and dissenting in part). I cannot join the majority opinion, which casts aside the cardinal principle of statutory interpretation: Save. Do not destroy.[1]
f 63. This court ordinarily follows the principle of constitutional avoidance. This court generally does not "decide constitutional questions if the case can be resolved on other grounds."[2]
f 64. Nevertheless, in the instant case, the majority opinion rushes headlong into determining the constitutionality of the statutes at issue without interpreting the statutes.
¶ 65. Disregard of bedrock, well-established principles of statutory interpretation in the instant case leads, in my opinion, to a lack of appropriate *192 respect and constitutional concern for crime victims and the legislative and executive branches of government.
¶ 66. In its constitutional analysis, the majority opinion overzealously and unnecessarily forces head-on collisions between:
• Article I, Section 9m of the Wisconsin Constitution, a 1993 constitutional amendment (hereinafter sometimes referred to as the Crime Victims Amendment) ensuring crime victims' rights[3] (including "timely disposition of the case") and vesting the legislature with the responsibility to "provide remedies for the violation of this section,"[4] and Article VII, Section 2 of the Wisconsin Constitution vesting *193 judicial power in the unified court system.[5] When interpreting a constitutional provision, a court seeks "to give effect to the intent of the framers and of the people who adopted it."[6]
• Article VII, Section 2 of the Wisconsin Constitution vesting judicial power in the unified court system and Wis. Stat. ch. 950 (2015 — 16)[7] entitled Rights of Victims and Witnesses of Crime, especially §§ 950.09 and 950.11,[8] and the powers and duties of the Department of Justice and the Crime Victims Rights Board.[9]
• Victims and judges.
• The judicial branch and the legislative branch. The Wisconsin Constitution vests the legislative power in a senate and assembly,[10] and Article I, Section 9m of the Wisconsin Constitution (the Crime Victims Amendment) states that"the legislature shall *194 provide remedies for the violation of the section."[11] (Emphasis added.)
• The judicial branch and the executive branch. The Crime Victims Rights Board, created by the legislature, is an executive branch agency attached to the Department of Justice.
f 67. The majority opinion declares judges and the judicial branch the "hands down" winner of these confrontations. The majority opinion's failure to analyze the Crime Victims Amendment and Chapter 950; its declaration that Wis. Stat. § 950.09(2)(a), § 950.09(2)(c)-(d), § 950.09(3), and § 950.11 are unconstitutional with respect to judges on the basis of the separation of powers doctrine; and its voiding the actions of the Crime Victims Rights Board relating to Judge Gabler unnecessarily aggrandize judicial powers at the expense of victims and the legislative and executive branches. See majority op.,ff 2, 46, 53, 56, 60. Moreover, the majority opinion dismally fails to provide any guidance on the interpretation of the constitutional and statutory provisions relating to crime victims.
¶ 68. Accordingly, I write separately.
¶ 69. Before I further discuss the majority opinion's veneer of constitutional analysis, it is important *195 to discuss Eau Claire County Circuit Court Judge William M. Gabler, Sr.'s role as the sentencing judge in the instant case.
¶ 70. When the crime victim asserted a claim against him, Judge Gabler had been considering a sentence in the pending criminal case. His task was to adhere to the statutes and federal and state constitutions in deciding the sentence. He had to consider the victim. He also had to consider the criminal defendant's constitutional and statutory rights to a fair trial and a fair sentencing. Notably, the Crime Victims Amendment unequivocally protects the rights of the accused. It states that nothing in the Crime Victims Amendment, "or in any statute enacted pursuant to this section, shall limit any right of the accused which may be provided by law."
¶ 71. Judge Gabler exercised his discretion in scheduling sentencing on the basis of his analysis of the facts and law. While the sentencing proceeding was pending, the Office of Crime Victim Services in the Department of Justice communicated with the Judge about scheduling the sentencing.[12]
f 72. While being questioned by this executive branch agency during the pending judicial proceedings, Judge Gabler displayed a steadfast commitment — as all judges and justices should — to being neutral, fair, impartial, and nonpartisan in performing judicial duties. The Judge was careful, however, to avoid ex parte communications (which raise serious issues of judicial ethics).[13] The Judge made it clear that he would listen *196 to and address the concerns presented, but that he would not be a slender reed easily buffeted by winds of pressure about sentencing.
| 73. Not all victims, circuit court or appellate judges or justices, lawyers, court observers, legislators, members of the executive branch, or the public would necessarily agree with Judge Gabler's discretionary decision regarding sentencing. Neither the majority nor I need decide whether we agree with the Judge's decision on the timing of the sentencing. That's not the issue before this court. Court procedures exist for deciding the validity of a circuit court judge's sentencing decisions in a criminal case.
¶ 74. Judge Gabler raises substantive legal issues before this court, namely the constitutionality of the challenged statutory provisions in Chapter 950 of the statutes. I address them.
¶ 75. In Part I, I set forth the applicable rules of statutory interpretation, a task the majority opinion never performs.
¶ 76. In Part II, I apply the rules applicable to interpreting the Wisconsin Constitution. I analyze the historical background and text of the Crime Victims Amendment, a task the majority opinion never performs. The constitutional debates and the general history of the adoption of the Amendment are also informative in interpreting the challenged statutory provisions.
f 77. In Part III, with the Crime Victims Amendment in mind, I apply the applicable statutory interpretive rules to the challenged statutory provisions. I *197 conclude that the majority opinion's declaration of statutory unconstitutionality on the basis of the doctrine of separation of powers is not tethered to the constitutional or statutory texts. The texts of the challenged statutory provisions have a constitutional interpretation that this court should adopt. I do so.
¶ 78. In Part IV, I assess the conduct of the Department of Justice and the Crime Victims Rights Board in the instant case to determine whether each has kept within or exceeded its statutory powers or violated the constitution.
¶ 79. For the reasons set forth, I conclude that the correct interpretation of the applicability of the challenged statutory provisions to judges depends on the text of the Crime Victims Amendment, the interpretation of the challenged statutory provisions, and the effect of other statutory provisions and the common law.
¶ 80. As properly interpreted, the challenged provisions of Chapter 950 are constitutional with respect to judges.
• Wisconsin Stat. § 950.08(3) does not authorize the Department of Justice to mediate a complaint against a judge.
• Wisconsin Stat. § 950.09(2) does not authorize the Crime Victims Rights Board to determine probable cause or investigate a crime victim's complaint against a judge.
• Wisconsin Stat. § 950.09(2)(a) does not authorize the Crime Victims Rights Board to "reprimand" a judge.
• Wisconsin Stat. § 950.09(2)(b) authorizes the Crime Victims Rights Board to refer a complaint about a judge to the Judicial Commission.
*198 • Wisconsin Stat. § 950.09(2)(c) does not authorize the Crime Victims Rights Board to seek equitable relief against a judge.
• Wisconsin Stat. § 950.09(2)(d) does not authorize the Crime Victims Rights Board to impose a forfeiture on a judge: A judge enjoys absolute immunity for actions taken in his or her official capacity.
• Wis. Stat. § 950.09(3) authorizes the Crime Victims Rights Board to issue a non-binding Report and Recommendation concerning crime victims rights and services. This court should not silence critiques of the judicial system authorized by the legislature.
® The Department of Justice and the Crime Victims Rights Board did not, in several instances, correctly interpret and apply the challenged statutes.
I
¶ 81. I first consider the rules of statutory interpretation to be applied when a challenge is made to the constitutionality of a statute. The majority opinion jumps right over this basic first step.
¶ 82. When the constitutionality of a statute is in question, "[t]he rule oft stated in our cases is that statutes are presumed to be constitutional. . . ."[14] In its haste to reach its declaration of unconstitutionality, the majority opinion does not even pay lip service to this rule.
¶ 83. "Because of the strong presumption in favor of constitutionality, a party bringing a constitutional challenge to a statute bears a 'heavy burden' " to *199 prove that the statute is unconstitutional.[15] The challenger has to prove, and the court has to be persuaded, that the statute is unconstitutional "beyond a reasonable doubt."[16]
¶ 84. In its haste to reach its declaration of unconstitutionality, the majority opinion does not even pay lip service to this rule either.
¶ 85. Because "courts have a duty to uphold statutes when they reasonably can," State v. Zarnke, 224 Wis. 2d 116, 142, 589 N.W.2d 370 (1999) (Prosser, J., dissenting); see also Zarnke, 224 Wis. 2d at 142-43 (Prosser, J., dissenting) (collecting cases), this court has an obligation to "search [] for a means of sustaining the act, not for reasons which might require its condemnation." State ex rel. Harvey v. Morgan, 30 Wis. 2d 1, 13, 139 N.W.2d 585 (1966).
¶ 86. The presumption of constitutionality of a statute and a court's obligation to search for reasons to sustain a statute necessarily inform this court's interpretation of a statute.
¶ 87. The parties' briefs address statutory interpretation, including legislative history, in their focus on issues of constitutionality. Clearly the parties followed a litigation strategy: Both Judge Gabler and the Crime Victims Rights Board have sought a ruling on the constitutionality of the statutory provisions at issue. Judge Gabler wants the statutes declared unconstitutional as to judges. The Crime Victims Rights Board, by its counsel the Wisconsin Department of Justice, wants the statutes declared constitutional as to judges.
*200 ¶ 88. Adopting the parties' litigation strategy "hook, line and sinker," the majority opinion centers on the parties' constitutional arguments.
f 89. I would have preferred to ask the parties to brief selected statutory interpretation issues. As I have written numerous times, this court benefits from briefs. Briefing and the adversarial process are more apt to lead a court to the right conclusion and are a fairer process for the litigants.[17] Fortunately, in the instant case, no further facts need to be developed to write on the issue of statutory interpretation.
¶ 90. In any event, principles governing constitutional avoidance and a court's decision making function do not rest on the parties' litigation strategy. "The parties may prefer a decision on constitutional grounds; but we, of course, are not bound by their litigation strategies." Wyman v. James, 400 U.S. 309, 345 n.7 (1971) (Marshall, J., dissenting).
¶ 91. The constitutionally protected rights of crime victims and the independence and interdependence of the three branches of government give the issue of statutory interpretation added significance.
¶ 92. Accordingly, I address the interpretation of the challenged statutes.
*201 ¶ 93. The presumption of constitutionality underlies three prevailing rules of statutory interpretation, sometimes referred to collectively as the canon of constitutional avoidance.[18] These rules govern the instant case and were not systematically applied by the majority opinion:
(1) A court should resolve a case on non-constitutional grounds if possible.[19]
(2) A court should interpret a statutory provision at issue in a manner that renders the statute constitutional by construing the statute to avoid a constitutional problem,[20] or, when facing equally *202 plausible interpretations of a statute, choosing the constitutional one.[21]
*203 (3) If a saving interpretation is not possible, a court should sever unavoidably unconstitutional provisions or applications of the statute and leave the remainder intact.[22] It "is axiomatic that a 'statute may be invalid as applied to one state of facts and yet valid as applied to another.' "[23]
¶ 94. In sum, my analysis of the issues presented follows these established rules of statutory interpretation.
*204 ¶ 95. The majority opinion does not. Its defense: "This case is incapable of resolution without deciding the constitutional conflict presented by the Board's exercise of its statutory powers." Majority op., ¶ 51. I disagree. The court should examine the statutes to decide the Board's powers before deciding the constitutionality of the statutes.
II
¶ 96. Before I analyze the applicability of the challenged (and presumably constitutional) statutory provisions to judges, I consider the state constitution Crime Victims Amendment. The challenged statutory provisions were created or amended subsequent to the adoption of the constitution's Crime Victims Amendment and are to be interpreted in light of the Amendment.
¶ 97. The Amendment, Article I, Section 9m of the Wisconsin Constitution, provides as follows:
Victims of crime. SECTION 9m. [As created April 1993] This state shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy. This state shall ensure that crime victims have all of the following privileges and protections as provided by law: timely disposition of the case; the opportunity to attend court proceedings unless the trial court finds sequestration is necessary to a fair trial for the defendant; reasonable protection from the accused throughout the criminal justice process; notification of court proceedings; the opportunity to confer with the prosecution; the opportunity to make a statement to the court at disposition; restitution; compensation; and information about the outcome of the case and the release of the accused. The legislature shall provide remedies for the violation of this section. Nothing in *205 this section, or in any statute enacted pursuant to this section, shall limit any right of the accused which may he provided by law. (Emphasis added.)
¶ 98. The court has set forth the method for interpreting a Wisconsin constitutional provision and has used this method in interpreting the Crime Victims Amendment. See Schilling v. Crime Victims Rights Bd., 2005 WI 17, ¶ 16, 278 Wis. 2d 216, 692 N.W.2d 623)(citations omitted).[24]
¶ 99. The court examines the constitutional debates and practices at the time of the drafting of the provision (including the general history relating to the constitutional amendment and the legislative history of the amendment), the text of the constitutional provision, and the earliest interpretation of the provision by the legislature as manifested in the first law enacted after the ratification of the constitutional provision. Naturally, judicial precedent interpreting the Amendment also matters.
f 100. The Amendment was obviously designed with crime victims in mind. Following a national trend of "constitutionalizing" victims' rights,[25] Wisconsin citizens voted to adopt the Crime Victims Amendment *206 in 1993.[26] Although crime victims were already protected by statute in Wisconsin,[27] the proponents of the Crime Victims Amendment sought to "constitutionalize" victims' rights. Proponents contended that a constitutional guarantee was "necessary to give weight to the statutory language and to ensure that all crime victims have access to the same services."[28]
¶ 101. The drafting record of the Crime Victims Amendment explains that advocates supported the Amendment because it provided victims with a mechanism for enforcement.[29] See Schilling, 278 Wis. 2d 216, ¶ 22; Gary Watchke, Wis. Legis. Reference Bureau Brief 93-4, Constitutional Amendments and Advisory Referenda to be Considered by Wisconsin Voters April 6, 1993, at 4 (Mar. 1993) (available on the Legislative Reference Bureau's website, http://lrbdigital.legis. wisconsin.gov/digital/collection/pl6831coll2/id/592/rec/ 5).
*207 ¶ 102. Three observations should be made regarding the Crime Victims Amendment. First, the constitution's Amendment is written in terms of the "privileges and protections" of crime victims, not "rights." Second, and relatedly, the Amendment unequivocally protects the rights of the accused. Third, the Amendment declares that the legislature "shall provide remedies for the violation of this section."
¶ 103. First, the text of the Crime Victims Amendment is framed in terms of the "privileges and protections" of crime victims, not "rights." A letter in the drafting file explains the genesis of the terminology "privileges and protections" and suggests that it is due little weight as an interpretive matter:
Sen. Adelman objected to the use of the term "right" in SJR 41. It became apparent that his objection was based more on the symbolism attached to the notion of "crime victims rights" than to any genuine legal or substantive meaning of the "rights" afforded .... We have, therefore, agreed to substitute the phrase "privileges and protections" for "rights" in the introduction to the enumerated provisions.[30]
¶ 104. Second, and relatedly, it appears that a central theme threading through the passage of the Crime Victims Amendment was to protect the rights of an accused. State Senator Lynn Adelman persuaded the *208 Joint Resolution's principal author, Senator Barbara Ulichny, to add the following language to the Amendment: "Nothing in this section, or in any statute enacted pursuant to this section, shall limit any right of the accused which may be provided by law." This language reflects the understanding of the drafters and leaders in the State Senate that "enactment of the amendment will not lead to a balancing of a defendant's legal rights against those of a crime victim"[31] and that a defendant's rights "would in no way be limited" by the privileges and protections granted crime victims.[32]
f 105. In fact, the importance placed on the Amendment's protection of the rights of the accused is demonstrated in the ballot question asking voters whether they wished to adopt the Amendment. The voters were asked:
*209 "Rights of victims of crime." Shall section 9m of article I of the constitution be created requiring fair and dignified treatment of crime victims with respect for their privacy and to ensuring that the guaranteed privileges and protections of crime victims are protected by appropriate remedies in law without limiting any legal rights of the accused?"[33] (Emphasis added.)
¶ 106. Third, the Crime Victims Amendment tasks the legislature with effectuating the Amendment.[34] The second sentence of the Amendment provides that the State "shall ensure that crime victims have all of the following privileges and protections as provided by law . . . . " (Emphasis added.) The phrase "as provided by law" was used "in order to ensure! ] that the legislature has great flexibility in devising a reasonable and workable means to implement the specific provisions of the amendment."[35] Furthermore, the second-to-last sentence of the Amendment states *210 that the legislature "shall provide remedies for violation of this section."[36]
¶ 107. Previous judicial interpretations of a constitutional provision are also informative in interpreting and applying the Amendment. This court has had only one occasion to interpret the Crime Victims Amendment.
¶ 108. The court interpreted the first sentence of the Crime Victims Amendment (stating that "this state shall treat crime victims . . . with fairness, dignity and respect for their privacy") in Schilling v. Crime Victims Rights Board, 2005 WI 17, 278 Wis. 2d 216, 692 N.W.2d 623. The Schilling court declared that this first sentence is a statement of purpose that does not provide enforceable, self-executing crime victims' rights. It merely guides interpretation of the remaining sentences of the constitutional provision and the statutory provisions enacted relating to crime victims' rights.[37] Accordingly, the court determined that a district attorney could not be privately reprimanded by the Crime Victims Rights Board under that provision.[38]
*211 ¶ 109. The constitution's Crime Victims Amendment has not otherwise been judicially interpreted.[39]
¶ 110. In sum, the text and history of the Crime Victims Amendment reflects the legislature's and the voters' concern for both crime victims and accused.
III
¶ 111. The first legislative enactment interpreting Article I, Section 9m of the Wisconsin Constitution after ratification was 1997 Wis. Act 181. Among other matters, it repealed and recreated Wis. Stat. § 950.04, the crime victims bill of rights, and created the Crime Victims Rights Board. The challenge in the instant case is to provisions of the 1997 Act as amended through the 2015-16 biennium. I proceed to examine the statutory provisions.
¶ 112. The majority opinion's dissertation and reliance on the separation of powers doctrine to strike down challenged statutory provisions in Chapter 950 as applicable to judges is untethered to the text of the Crime Victims Amendment and the challenged statutes. Indeed, textual analysis is conspicuously absent from the majority opinion.
¶ 113. The majority opinion defends its rush to constitutional decision without textual analysis by asserting that resolution of the constitutional separation of powers issue is "essential." Majority op., ¶¶ 52-53 (citing Kollasch v. Adamany, 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51 (1981)).
*212 ¶ 114. Putting the cart before the horse, so to speak, the majority opinion makes the separation of powers issue seem "essential" by framing the issue presented as follows:
May an executive agency, acting pursuant to authority delegated by the legislature, review a Wisconsin court's exercise of discretion, declare its application of the law to be in error, and then sanction the judge for making a decision the agency disfavors?
Majority op., ¶ 36.
¶ 115. The majority opinion frames the issue to engender the response that a statute enabling an executive branch agency to so act is unconstitutional. The majority opinion asserts, without analysis of the text of the statutes, that the Board has authority "to investigate and adjudicate complaints against judges, issue reprimands against judges, and seek equitable relief and forfeitures through civil actions against judges." Majority op., ¶[ 2. The majority opinion should, in my opinion, frame the issues in a more neutral fashion. The issues to be considered are what authority did the legislature grant an executive agency relative to crime victim complaints against judges and is this grant of authority constitutional?[40]
f 116. A careful analysis of the Crime Victims Amendment (Article I, Section 9m of the Wisconsin *213 Constitution), and Chapter 950 (the statutes relating to victims and witnesses of crime), demonstrates that the legislature did not confer "unconstitutional" powers on an executive agency relating to a crime victim's complaint against a judge. A court must presume that the legislature intended a statute to comply with the legislature's constitutional powers and duties. A court must follow the cardinal principle of saving rather than destroying a statute's constitutionality.
A
¶ 117. I begin with the legislature's first enactment after voters adopted the Crime Victims Amendment, namely 1997 Wis. Act 181, as amended through *214 the 2015-16 biennium. The Act was apparently enacted in response to the directive in the Crime Victims Amendment that "[t]he legislature shall provide remedies for the violation of this section."[41] The Act created a Crime Victims Rights Board and delegated functions relating to crime victims to the Department of Justice.
¶ 118. Act 181 created a five-member Crime Victims Rights Board. Wis. Stat. § 15.255(2).[42] The Board is an executive agency that is "attached" to the Wisconsin Department of Justice for limited administrative purposes.[43] The Act provides that the Board "shall *215 promulgate rules establishing procedures for the exercise of its powers under this section." Wis. Stat. § 950.09(5).[44]
f 119. Despite the creation of the Board as a distinct agency, the Department of Justice retains statutory authority and duties regarding crime victims under the Act. The Department's authority and duties are intertwined with the functioning of the Board. The Board may act on a victim's complaint after the Department has completed its actions with regard to a victim's complaint.[45]
¶ 120. Most importantly for purposes of the instant case is the Department of Justice's mediation function regarding crime victim complaints. The Department's mediation function is set forth in Wis. Stat. § 950.08(3) as follows:
The department may receive complaints, seek to mediate complaints and, with the consent of the involved parties, actually mediate complaints regarding the treatment of crime victims and witnesses by public *216 offlcialsl[46]]. .. . The department may act as a liaison between crime victims or witnesses and others when seeking to mediate these complaints and may request a written response regarding the complaint from the subject of a complaint. If asked by the department to provide a written response regarding a complaint, the subject of a complaint shall respond to the department's request within a reasonable time. (Emphasis added.)
¶ 121. The phrase "public officials" is not defined in Wis. Stat. § 950.08(3) or elsewhere in Chapter 950, although it is used several times in the chapter.[47]
¶ 122. In giving meaning to the phrase "public officials" in Wis. Stat. § 950.08(3), I must consider the context in which the phrase is used. A phrase that ordinarily has a particular meaning may not have that meaning in certain circumstances as it interacts "with and relate [s] to other provisions in the statute and to other statutes."[48] Ordinarily the phrase would include *217 judges. A question arises, however, whether the phrase in § 950.08(3) includes judges.
f 123. Participation in mediation is not required under Wis. Stat. § 950.08(3). I conclude, however, that the phrase "public officials" in § 950.08(3) relating to the Department's mediation function does not include judges for four interrelated reasons: the Crime Victims Amendment, the nature of the mediation process, the prohibition on questioning a judge outside a judicial proceeding about the judge's thought processes regarding an act taken in the judge's official capacity, and the many conflicting roles that the Department plays in the administration of the criminal justice system.
¶ 124. The Crime Victims Amendment unequivocally provides that neither it nor the legislature limits the rights of the accused. An accused has the right to a judge's exercise of discretion regarding sentencing. "[Sentencing is a discretionary judicial act. . . ." McCleary v. State, 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971). See also State v. Gallion, 2004 WI 42, ¶ 68, 270 Wis. 2d 535, 678 N.W.2d 197 ("The circuit court possesses wide discretion in determining what factors are relevant to its sentencing decision.").
¶ 125. In the instant case, the victim complained to the Department of Justice while the sentencing proceeding was pending before Judge Gabler. The Department never mediated the matter. Had it attempted to do so (either before or after the completion of sentencing), the mediation would have interfered with the defendant's rights.
¶ 126. The nature of the mediation process also points to the conclusion that the Department does not have statutory authority to mediate a crime victim's complaint against a judge under Wis. Stat. § 950.08(3). Mediation is a form of dispute resolution in which people in conflict are assisted by a neutral third person *218 to reach a voluntary agreement.[49] Mediation between the victim and the judge would have taken place outside the presence of the parties in the criminal case — namely, the defendant and the State as prosecutor — and thus would have constituted ex parte communications.[50]
¶ 127. Another problem with classifying judges as "public officials" subject to mediation by the Department of Justice is that mediation appears to bear the imprimatur of revealing a judge's thought processes outside a judicial proceeding regarding an act taken in the judge's official capacity. Such a process is problematic. "The overwhelming authority concludes that a judge may not be compelled to testify concerning mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties."[51]
*219 ¶ 128. Furthermore, when the Department acts as mediator, it is wearing only one of many hats it wears in the criminal justice system. For example, the Department consults with and advises district attorneys in all matters pertaining to their duties;[52] appears for the State and prosecutes or defends all actions and proceedings, civil or criminal, in this court and in the court of appeals;[53] and appears forjudges in any civil action or other matter brought before a court or administrative agency growing out of the judge's duties.[54] The Department's multiple roles raise a Gordian knot of conflict-of-interest questions.
¶ 129. Interpreting "public officials" in Wis. Stat. § 950.08(3) to include a judge for purposes of mediation by the Department of Justice would entangle judges in this web of conflicts.
*220 ¶ 130. These considerations cast significant doubt on interpreting the phrase "public officials" in Wis. Stat. § 950.08(3) to include a judge and to enable the Department of Justice to mediate a crime victim's complaint against a judge.
¶ 131. In sum, mediation would have interfered with an accused's rights guaranteed by the federal and state constitutions to a fair, impartial, neutral, nonpartisan judge exercising his or her discretion in sentencing; interfered with ongoing proceedings in the circuit court; involved ex parte communications; involved the judge in explaining his or her thought processes; and entangled the judge in a web of the Department's conflicts.
f 132. When there are multiple "competing plausible interpretations" of a statute, the canon of constitutional avoidance instructs a court to choose the constitutional interpretation based on the "reasonable presumption that [the legislature] did not intend the alternative which raises serious constitutional doubts." Clark v. Martinez, 543 U.S. 371, 381 (2005).[55]
f 133. Accordingly, applying the rules of statutory interpretation, I conclude that the phrase "public *221 officials" in Wis. Stat. § 950.08(3) for purposes of mediation by the Department of Justice does not include judges. Judges are not subject to the Department's mediation of a crime victim's complaint under § 950.08(3).
B
f 134. Having decided that Wis. Stat. § 950.08(3) does not grant the Department of Justice authority to mediate a crime victim's complaint against a judge, I turn to the power of the Crime Victims Rights Board over a crime victim's complaint against a judge. The Board takes the position in the instant case that it has authority over a crime victim's complaint against a judge even though no mediation takes place. According to the Board, the Department of Justice need not mediate a matter for the Board to attain power over a crime victim's complaint against a judge; for the Board to act on a complaint, the Department need confirm only that it has completed its action under Wis. Stat. § 950.08(3).[56]
f 135. Although the statutes and Board rules might be interpreted to require mediation by the Department of Justice as a prerequisite to the Board's functioning,[57] I agree that mediation is discretionary with a party and is not a necessary prerequisite for the Board to function.
f 136. The Crime Victims Rights Board's functions are described in Wis. Stat. § 950.09(2)(a)-(d).

*222
Wis. Stat. §950.09(2)

¶ 137. The introductory language in § 950.09(2) (quoted below) requires the Board to determine, before it begins any investigation or takes any action, that there is probable cause to believe that the subject of the complaint violated the rights of a crime victim.
Wis. Stat. § 950.09(2) At the request of one of the involved parties, the board may review a complaint made to the department under s. 950.08(3) regarding a violation of the rights of a crime victim. A party may not request the board to review a complaint under this subsection until the department has completed its action on the complaint under s. 950.08(3). In reviewing a complaint under this subsection, the board may not begin any investigation or take any action specified in pars, (a) to (d) until the board first determines that there is probable cause to believe that the subject of the complaint violated the rights of a crime victim. . . .
¶ 138. To determine whether there is probable cause, the Board requests the subject of the complaint to submit an answer. Wis. Admin. Code § CVRB 1.05(4), (5) (June 2000). The Board determines probable cause based on the complaint, answer, and any information provided by the mediator. Wis. Admin. Code § CVRB 1.05(6), (7) (June 2000). If the Board finds probable cause, it may commence an investigation. Wis. Admin. Code § CVRB 1.05(8) (June 2000).[58]
*223 ¶ 139. The Board's rules provide that it may, as an investigatory body, "request responses [from the subject of a complaint] to written questions, participation in a personal or telephone interview with the Board, and written documentation." Wis. Admin. Code § CVKB 1.06 (June 2000). A hearing may be held. Wis. Admin. Code § CVBB 1.07 (June 2000).
¶ 140. A party's participation in the Board's finding of probable cause, investigation, and hearing is not required. For substantially similar reasons for my conclusion that the statute, properly interpreted, does not authorize the Department of Justice to mediate a crime victim's complaint against a judge, I conclude that the Board is not authorized to determine probable cause or investigate a crime victim's complaint against a judge.
f 141. The Board's probable cause determination and investigation of a crime victim's complaint would, in violation of the Crime Victims Amendment, limit the judge's decision-making ability and the rights of the accused, would require the judge to engage in ex parte communications, and would require the judge to explain, outside the judicial proceeding, the judge's thought processes regarding an act taken in the judge's official capacity. See ¶ 126 & n.50, supra.
¶ 142. Accordingly I conclude that Wis. Stat. § 950.09(2) does not authorize the Crime Victims Rights Board to determine probable cause or investigate a crime victim's complaint against a judge.

Wis. Stat. § 950.09(2)(a), (c), & (d)

¶ 143. After a determination of probable cause and investigation under Wis. Stat. § 950.09(2), the Board "may do any of the following":
*224 (a) Issue private and public reprimands of public officials, employees or agencies that violate the rights of crime victims provided under this chapter, ch. 938 and article I, section 9m, of the Wisconsin constitution. [DECLARED UNCONSTITUTIONAL by MAJORITY OPINION as to JUDGES.]
(b) Refer to the judicial commission a violation or alleged violation by a judge of the rights of crime victims provided under this chapter, ch. 938 [59] and article I, section 9m, of the Wisconsin constitution. [NOT CHALLENGED.]
(c) Seek appropriate equitable relief on behalf of a victim if such relief is necessary to protect the rights of the victim. The board may not seek to appeal, reverse or modify a judgment of conviction or a sentence in a criminal case. [DECLARED UNCONSTITUTIONAL by MAJORITY OPINION as to JUDGES.]
(d) Bring civil actions to assess a forfeiture under s. 950.11. Notwithstanding s. 778.06, an action or proposed action authorized under this paragraph may be settled for such sum as may be agreed upon between the parties. In settling actions or proposed actions, the board shall treat comparable situations in a comparable manner and shall assure that any settlement bears a reasonable relationship to the severity of the offense or alleged offense. Forfeiture actions brought by the board shall be brought in the circuit court for the county in which the violation is alleged to have occurred. (Emphasis added.) [DECLARED UNCONSTITUTIONAL by MAJORITY OPINION as to JUDGES.]
*225 f 144. Although the Board cannot determine probable cause or investigate a crime victim's complaint against a judge, I address Wis. Stat. § 950.09(2)(a), (c), and (d) to determine their applicability to judges.
f 145. I approach each challenged paragraph (that is, (a), (c), and (d)) of Wis. Stat. § 950.09(2) in turn with the rules of statutory interpretation in mind. I conclude that these three paragraphs do not empower the Board to act on a crime victim's complaint against a judge.
f 146. Wis. Stat. § 950.09(2)(a). Paragraph (a) of Wis. Stat. § 950.09(2) refers to "public officials." As in Wis. Stat. § 950.08(3), the phrase "public officials " is undefined. The majority opinion assumes, without analysis, that the phrase includes judges. I do not. This assumption is unreasonable for several reasons.
f 147. First, as I explained above, the phrase "public officials" used in Wis. Stat. § 950.08(3) cannot be interpreted as referring to judges. See ¶¶ 121-131, supra. If the phrase in § 950.08(3) does not include judges, the phrase in § 950.09(2) probably does not refer to judges. Why? Because § 950.08(3) and § 950.09(2) are tied together, and it is only logical that the phrase would have the same meaning in both places.[60]
¶ 148. Second, Wis. Stat. § 950.09(2)(a)'s use of the word "reprimand" along with the phrase "public officials" leads a reader to conclude that the phrase *226 "public officials" does not include a judge. The word "reprimand" is a word used in the Wisconsin Constitution and statutes referring to discipline of judges. Discipline of judges is governed by Article VII, Section 11 of the Wisconsin Constitution,[61] Wis. Stat. §§ 757.71-.99, and Supreme Court Rules Chapter 60.[62] To interpret the phrase "public official" in § 950.09(2)(a) to mean that the Board may reprimand a judge renders this provision constitutionally problematic because other constitutional and statutory provisions explicitly govern judicial discipline, including reprimand.
¶ 149. Interpreting the phrase "public official" in Wis. Stat. § 950.09(2)(a) as not including a judge or justice renders the phrase "public official" used in § 950.09(2)(a) consistent with the use of the phrase in § 950.08(3) and avoids a constitutional challenge to § 950.09(2)(a).
f 150. Third, the statutes state that the Board has authority to refer a violation or alleged violation by a judge of the rights of a crime victim to the Judicial Commission. This statement appears not once but twice in Chapter 950. See Wis. Stat. §§ 950.09(2)(b), 950.095(2)(b).
*227 ¶ 151. These provisions specifically referring to a judge and the Judicial Commission imply that the legislature excluded judges from the phrase "public officials"; the legislature chose to single out judges and not treat judges as "public officials."
f 152. There is no constitutional or statutory problem with the Board's forwarding complaints against a judge to the Judicial Commission.
¶ 153. Fourth, Wis. Stat. § 950.105 gives a crime victim the right to assert, in the circuit court in which the alleged violation has occurred, his or her rights as a crime victim under the statutes or under Article I, Section 9m of the Wisconsin Constitution. The inference to be drawn is that the crime victim has a remedy for a complaint against a judge and need not rely on the Board to resolve the complaint.
¶ 154. Fifth, during enactment of Wis. Stat. § 950.09 the legislature rejected an amendment to the bill that would have prevented the Board from reviewing a complaint made against a judge.[63] The Crime Victims Rights Board argues in this court that the rejected amendment means the legislature intended the Board to oversee a crime victim's complaint against a judge under § 950.09.[64] Another more plausible interpretation is that the amendment was not necessary in light of the other provisions in subsection 950.09(2) expressing the legislative intent that certain provisions in § 950.09(2) do not govern judges.
¶ 155. Sixth, Wis. Stat. § 950.04(lv)(ag), a provision in the crime victims bill of rights, includes the phrase "public officials": A crime victim has the right *228 "to be treated with fairness, dignity and respect for his or her privacy by public officials, employees or agencies."[65] The phrase "public officials" is not defined here either.
f 156. Even if the phrase includes judges, the next sentence provides: "This paragraph does not impair the right or duty of a public official or employee to conduct his or official duties reasonably and in good faith." These two sentences read together demonstrate that the legislature was careful not to allow this provision referring to public officials to include judges and interfere with a judge's core function of deciding cases.
¶ 157. Seventh and last (and perhaps most importantly), Wis. Stat. § 950.09(2)(c) explicitly and significantly limits the Board's powers over a judge or a judge's decision in a criminal case, stating: "The board may not seek to appeal, reverse or modify a judgment of conviction or a sentence in a criminal case."[66]
f 158. A similar limitation on a crime victim's sway over a circuit court's decision-making powers appears in Wis. Stat. § 950.10(2). This subsection pro *229 vides that a court's failure to comply with Chapter 950 or Article I, Section 9m of the Wisconsin Constitution, the Crime Victims Amendment, is not grounds for an appeal of a judgment of conviction and is not grounds to reverse or modify a judgment of conviction or a sentence.[67]
¶ 159. Applying the rules of statutory interpretation to Wis. Stat. § 950.09(2)(a), I conclude that Wis. Stat. § 950.09(2)(a) does not apply to judges. If the Board has no statutory power to reprimand judges, no constitutional issue arises by virtue of § 950.09(2)(a).
¶ 160. Wis. Stat. § 950.09(2)(c). Wisconsin Stat. § 950.09(2)(c) empowers the Crime Victims Rights Board to seek appropriate equitable relief as follows:
Wis. Stat. § 950.09(2)(c) Seek appropriate equitable relief on behalf of a victim if such relief is necessary to protect the rights of the victim. The board may not seek to appeal, reverse or modify a judgment of conviction or a sentence in a criminal case.
¶ 161. This provision does not explicitly allow the Board to seek equitable judicial relief against a court or judge. Interpreting the provision to allow such *230 equitable relief would negate the second sentence, which significantly limits the Board's power over courts and judges.
¶ 162. Furthermore, the Crime Victims Amendment explicitly states that neither the Amendment nor any statute enacted pursuant thereto shall limit any right of the accused which may be provided by law. An accused has the right to a fair, neutral, impartial, and nonpartisan judicial proceeding conducted according to law, including a judge's exercise of discretion.
f 163. If the Board were able to seek equitable relief to enjoin a court or judge from scheduling sentencing, for example, that action would limit the accused's rights in contravention of the Crime Victims Amendment.[68]
¶ 164. In sum, as a matter of statutory interpretation I conclude that Wis. Stat. § 950.09(2)(c) does not confer power on the Board to seek equitable relief against a judge or court.
f 165. Wis. Stat. § 950.09(2)(d). Wisconsin Stat. § 950.09(2)(d) provides that the Crime Victims Rights Board may
[b]ring civil actions to assess a forfeiture under s. 950.11. .. . Forfeiture actions brought by the board shall be brought in the circuit court for the county in which the violation is alleged to have occurred.
¶ 166. Section 950.09(2)(d) does not explicitly grant the Board the authority to bring a forfeiture action against a judge.
¶ 167. Another provision, Wis. Stat. § 950.11, to which § 950.09(2)(d) refers, explains that a civil action *231 to assess a forfeiture under § 950.09(2)(d) may be brought against "public official." Wisconsin Stat. § 950.11 provides:
Penalties. A public official, employee or agency that intentionally fails to provide a right specified under s. 950.04(lv) to a victim of a crime may be subject to a forfeiture of not more than $1,000.
Again the phrase "public official" is not defined.
¶ 168. The majority opinion declares that Wis. Stat. § 950.09(2)(d) is unconstitutional as applied to judges on the ground that it allows the Board to "financially penalize" a judge. Majority op., ¶ 42. The majority opinion errs.
¶ 169. As a matter of statutory interpretation, the phrase "public official" used in Wis. Stat. § 950.11 and applicable to § 950.09(2)(d) does not include judges. The phrase "public officials" is used in the same way in § 950.11 as it is used in §§ 950.08(3), 950.09(2)(a), 950.04(lv)(ag), and 950.04(lv)(dr), and does not include a judge.
f 170. Even if judges were "public officials" under Wis. Stat. § 950.09(11), a forfeiture action cannot be brought against a judge under § 950.09(2)(d). Judges have absolute judicial immunity as a matter of statutory and common law in Wisconsin.[69] Although this absolute immunity is limited to acts taken within the jurisdiction of the court, a judge's decision on scheduling sentencing, for example, is without a doubt an act taken within the jurisdiction of the court.
*232 ¶ 171. I thus conclude as a matter of statutory interpretation and the doctrine of judicial immunity that Wis. Stat. § 950.09(2)(d) does not authorize the imposition of a forfeiture on judges as a matter of statutory and common law.[70]

Wis. Stat. §950.09(3)

¶ 172. I turn now to Wis. Stat. § 950.09(3) authorizing the Crime Victims Rights Board to issue Reports and Recommendations "concerning the securing and provision of crime victims rights and services." The text of § 950.09(3) applies to judges and judicial proceedings, inter alia, and provides as follows:
Wis. Stat. § 950.09(3) In addition to its powers under sub. (2), the board may issue reports and recommendations concerning the securing and provision of crime victims rights and services. (Emphasis added.)
¶ 173. The Crime Victims Amendment entrusts the legislature, as I have stated previously, with the responsibility to "provide remedies for the violation of this section." The Report and Recommendation is one remedy the legislature has provided under the Crime Victims Amendment.[71]
f 174. The majority opinion declares Wis. Stat. § 950.09(3) unconstitutional as applied to judges under the separation of powers doctrine on the ground that *233 "the Board encroached on exclusive judicial authority. . . Majority op., ¶ 41. The majority opinion feigns that the Board's Report and Recommendation invades judicial decision-making in the instant case by recommending the timing for scheduling a sentencing proceeding. Majority op., ¶ 41. The Report and Recommendation relating to the instant case does no such thing.
¶ 175. The majority opinion ignores the statutory language and the Board's interpretation and application thereof.
¶ 176. The Board's Reports and Recommendations recommend best practices for "securing . . . crime victims rights." The Reports often begin with a statement that "the Board has become aware of a situation that provides the Board with an opportunity to" comment on the situation and recommend best practices for assisting victims. The Report describes the factual background of the situation, as the Board understands it. After stating the facts, often taken from a transcript of the court proceedings, the Report generally sets forth the applicable statutes, the issues, and the recommendations. None of the Reports reveals names, the county in which the situation arose, or other identifying indicators. No report reprimands a judge or interferes with any of the judiciary's core powers.
¶ 177. The Board has issued at least six Reports and Recommendations relating to a crime victim in a judicial proceeding. Each of the Reports and Recommendations is public and can be found on the Board's website. See https://www.doj.state.wi.us/ocvs/cvrb-documents.[72]
*234 f 178. Neither the statute nor the Report and Recommendation itself provides a means for enforcing the Board's Report and Recommendation. In other words, the Report and Recommendation does not bind anyone. The Report and Recommendation is just what its title denotes — no more, no less.
¶ 179. The majority opinion recognizes it should not use its judicial power to stifle criticism of judicial decisions, judicial practices, judges, or the judicial system. But stifle it does. The majority opinion declares that the Board's Report and Recommendation generally describing a situation involving a crime victim and proposing best practices for judges is unconstitutional. Majority op., ¶¶ 54-57.
¶ 180. Section § 950.09(3) does not present even a close call for me: The court should not silence legislatively authorized evaluations of the judicial system by an executive agency composed of criminal justice professionals and public members. The institutions composing the criminal justice system, including the courts, should welcome all the help we can get.
f 181. I conclude that the Board's authority to issue a Report and Recommendation set forth in Wis. Stat. § 950.09(3) is a legislative remedy authorized by the Crime Victims Amendment that helps secure crime victims rights and services and does not limit the rights of an accused or violate any constitutional provision. The Board's power to issue Reports and Recommendations pursuant to § 950.09(3) is constitutional as applied to judges.

Wis. Stat. § 950.11

f 182. Finally, I address Wis. Stat. § 950.11 imposing penalties on public officials. Section 950.11 states that a public official who intentionally fails to *235 provide a right specified under the crime victims bill of rights may be subject to forfeiture as follows:
Wis. Stat. § 950.11. Penalties A public official, employee or agency that intentionally fails to provide a right specified under s. 950.04 (lv) to a victim of a crime may be subject to a forfeiture of not more than $1,000. [DECLARED UNCONSTITUTIONAL by MAJORITY OPINION as to JUDGES]
¶ 183. Again, this statute does not define the phrase "public official." The majority opinion declares this provision unconstitutional as applied to judges on the ground that the Board "could financially penalize a judge for exercising legal judgment. . . ." Majority op., I 42.
f 184. I conclude this provision does not apply to judges. The phrase "public official" does not include a judge, as I have explained previously.
¶ 185. Moreover, a judge has absolute judicial immunity from personal liability under statute and common law if the judge acts within the jurisdiction of the court. See ¶ 170 & n.69, supra.
IV
¶ 186. I now turn from the statutory provisions to assess the conduct of the Department of Justice and the Crime Victims Rights Board in the instant case. I must determine whether either or both exceeded their statutory powers or violated the federal or state constitution in the instant case.
¶ 187. The Department of Justice does not have the statutory power to mediate a complaint by a crime victim against a judge; it did not attempt to perform mediation in the instant case.
*236 ¶ 188. The Crime Victim Rights Board, however, sought to determine probable cause and to investigate the crime victim's complaint against Judge Gabler under Wis. Stat. § 950.09(2). The statute, properly-interpreted, does not authorize the Board to undertake these pursuits in relation to a crime victim's complaint against a judge. To the extent that the Board did so, the Board exceeded its statutory powers.
f 189. The Board does not have the authority to reprimand Judge Gabler or to interfere with the Judge's discretion in scheduling sentencing. To the extent that the Board undertook to reprimand the judge or interfere with the judge's discretion, it exceeded its statutory authority.
f 190. The statutes do not authorize the Board to seek equitable relief or to bring a civil action against a judge to assess a forfeiture. The Board did not do so in the instant case.
¶ 191. The Board issued a Report and Recommendation based on the facts of the instant case. The Report did not identify the Judge, the crime victim, or the county and did not include any identifying factors. The legislature has the responsibility to "provide remedies for the violation" of the Crime Victims Amendment. One of a crime victim's privileges and protections under the Crime Victims Amendment and the crime victims bill of rights is the "timely disposition of the case." One remedy the legislature has provided is the Board's issuance of Reports and Recommendations. Wis. Stat. § 950.09(3).
f 192. I conclude that the Board's power to issue Reports and Recommendations is constitutional when applied to a judge and does not interfere with the judiciary's core powers.
*237 * * * *
f 193. As properly interpreted, the challenged sections of Chapter 950 are constitutional with respect to judges.
• Wisconsin Stat. § 950.08(3) does not authorize the Department of Justice to mediate a complaint against a judge.
• Wisconsin Stat. § 950.09(2) does not authorize the Crime Victims Rights Board to determine probable cause or investigate a crime victim's complaint against a judge.
• Wisconsin Stat. § 950.09(2)(a) does not authorize the Crime Victims Rights Board to "reprimand" a judge.
• Wisconsin Stat. § 950.09(2)(b) authorizes the Crime Victims Rights Board to refer a complaint about a judge to the Judicial Commission.
• Wisconsin Stat. § 950.09(2)(c) does not authorize the Crime Victims Rights Board to seek equitable relief against a judge.
• Wisconsin Stat. § 950.09(2)(d) does not authorize the Crime Victims Rights Board to impose a forfeiture on a judge: A judge enjoys absolute immunity for actions taken in his or her official capacity.
• Wisconsin Stat. § 950.09(3) authorizes the Crime Victims Rights Board to issue a non-binding Report and Recommendation concerning the securing of crime victims' rights and services. This court should not silence critiques of the judicial system as authorized by the legislature.
• The Department of Justice and the Crime Victims Rights Board, however, did not correctly interpret and apply the challenged statutes.
*238 ¶ 194. The majority opinion contravenes basic principles of statutory and constitutional interpretation. Applying the canon of constitutional avoidance, I conclude that the challenged statutory provisions are easily amenable to a constitutional interpretation. The majority opinion's lengthy foray into the separation of powers analysis is unnecessary and inappropriate.
¶ 195. When a court addresses the scope of the judicial branch's power and the powers of the other branches of government, it must avoid an overzealous defense of the judiciary's power and must avoid appropriation of unchecked power in the judiciary.
¶ 196. The Crime Victims Amendment and the statutes demonstrate the legislature's attempt at a thoughtful, even-handed approach to crime victims, accuseds, and judicial and executive branch functions. Is the drafting perfect? No. But perfect drafting is rarely the hallmark of any state or federal statute (or opinion of a court).
f 197. For the reasons set forth, I write separately.

 "The cardinal principle of statutory construction is to save and not to destroy." N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 30 (1937).

 Labor & Farm Party of Wis. v. Elections Bd., 117 Wis. 2d 351, 354, 344 N.W.2d 177 (1984).

 The history of the Crime Victims Amendment demonstrates that the amendment uses the phrase "privileges and protections" rather than the word "rights" but that this phrase was viewed as synonymous with the word "rights." Memorandum from Racine County District Attorney Lennie Weber to Senator Barbara Ulichny, Feb. 24, 1992 (available in the drafting file for 1991 S.J.R. 41).

 Article I, Section 9m of the Wisconsin Constitution provides:
Victims of crime. SECTION 9m. [As created April 1993] This state shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy. This state shall ensure that crime victims have all of the following privileges and protections as provided by law: timely disposition of the case; the opportunity to attend court proceedings unless the trial court finds sequestration is necessary to a fair trial for the defendant; reasonable protection from the accused throughout the criminal justice process; notification of court proceedings; the opportunity to confer with the prosecution; the opportunity to make a statement to the court at disposition; restitution; compensation; and information about the outcome of the case and the release of the accused. The legislature shall provide remedies for the violation of this section. Nothing in this section, or in any statute enacted pursuant to this section, shall limit any right of the accused which may be provided by law. (Emphasis added.)

 Article VII, Section 2 of the Wisconsin Constitution provides:
Court system. SECTION 2. [As amended April 1966 and April 1977] The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of general uniform statewide jurisdiction as the legislature may create by law, and a municipal court if authorized by the legislature under section 14.

 Schilling v. Crime Victims Rights Bd., 2005 WI 17, ¶ 13, 278 Wis. 2d 216, 692 N.W.2d 623 (citation omitted).

 All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

 For the text and discussion of relevant provisions of Wis. Stat. ch. 950, see ¶¶ 136-185, infra.

 The statute creating the Crime Victims Rights Board is quoted at ¶ 118 n.42, infra.

 Article III, Section 1 provides: "The legislative power is vested in a senate and assembly."

 The drafting record explains that advocates supported the constitutional amendment because it provided victims with a mechanism for enforcement. See Schilling, 278 Wis. 2d 216, ¶ 22. See also Gary Watchke, Wis. Legis. Reference Bureau Brief 93-4, Constitutional Amendments and Advisory Referenda to he Considered by Wisconsin Voters April 6, 1993 at 4 (Mar. 1993) (available on the Legislative Reference Bureau's website, http://lrbdigital.legis.wisconsin.gov/digital/collection/ pl683 lcoll2/id/592/rec/5).

 See majority op., ¶ 16 (quoting Judge Gabler's response to the initial letter from the Crime Victims Services explaining his reasons for the date he chose for sentencing).

 See majority op., ¶¶ 12-17. The provision in the Wisconsin Code of Judicial Conduct regarding ex parte communi *196 cations is SCR 60.04(l)(g): "A judge may not initiate, permit, engage in or consider ex parte communications concerning a pending or impending action or proceeding . . .. " (The exceptions stated are not relevant in the instant case.)

 Demmith v. Wis. Judicial Conference, 166 Wis. 2d 649, 662 n.9, 480 N.W.2d 502 (1992) (citing State v. Holmes, 106 Wis. 2d 31, 41, 315 N.W.2d 703 (1982)).

 Wis. Med. Soc'y, Inc. v. Morgan, 2010 WI 94, ¶ 37, 328 Wis. 2d 469, 787 N.W.2d 22 (quoting State v. Carpenter, 197 Wis. 2d 252, 276, 541 N.W.2d 105 (1995)).

 State v. Scruggs, 2017 WI 15, ¶ 13, 373 Wis. 2d 312, 891 N.W.2d 786; State v. Smith, 2010 WI 16, ¶ 8, 323 Wis. 2d 377, 780 N.W.2d 90.

 "The rule of law is generally best developed when issues are raised by the parties and then tested by the fire of adversarial briefs and oral arguments." State v. Howes, 2017 WI 18, ¶ 104 n.7, 373 Wis. 2d 468, 893 N.W.2d 812 (Abrahamson, J., dissenting) (quoting City of Janesville v. CC Midwest, Inc., 2007 WI 93, ¶ 68, 302 Wis. 2d 599, 734 N.W.2d 428 (Ann Walsh Bradley, J., dissenting)).
See also Dairyland Greyhound Park, Inc., v. Doyle, 2006 WI 107, ¶ 335, 295 Wis. 2d 1, 719 N.W.2d 408 (Roggensack, J., concurring in part & dissenting in part) ("As various members of this court have said, we should not 'reach out and decide issues' that were not presented to the court by the parties.").

 The canon of constitutional avoidance was most famously restated in Justice Brandeis's concurrence in Ashwander v. Tennessee Valley Auth., 297 U.S. 288 (1936), in which he extolled a "series of rules under which [the Court] has avoided passing upon a large part of all the constitutional questions pressed upon it for decision." Ashwander, 297 U.S. at 346 (Brandeis, J., concurring).

 Ordinarily a court "will not decide a constitutional question if there is some other ground upon which to dispose of the case." Escambia Cty. v. McMillan, 466 U.S. 48, 51 (1984) per curiam). Accord Kollasch v. Adamany, 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51 (1981) ("As a matter of judicial prudence, a court should not decide the constitutionality of a statute unless it is essential to the determination of the case before it."); Labor & Farm Party of Wis. v. Elections Bd., 117 Wis. 2d 351, 354, 344 N.W.2d 177 (1984) ("We need not reach these various constitutional issues because we conclude the case can be resolved on statutory construction grounds alone. This court does not normally decide constitutional questions if the case can be resolved on other grounds"); DeBruin v. St. Patrick Congregation, 2012 WI 94, ¶ 42, 343 Wis. 2d 83, 816 N.W.2d 878 (Crooks, J., concurring) ("[W]e do not normally reach constitutional issues in cases that are resolvable on other grounds ....").

 See, e.g., Kenosha Cty. DHS v. Jodie W., 2006 WI 93, ¶ 20, 293 Wis. 2d 530, 716 N.W.2d 845 ("Where the constitutionality of a statute is at issue, courts [should] attempt to avoid an interpretation that creates constitutional infirmi *202 ties."); Am. Family Mut. Ins. v. DOR, 222 Wis. 2d 650, 667, 586 N.W.2d 872 (1998) ("A court should avoid interpreting a statute in such a way that would render it unconstitutional when a reasonable interpretation exists that would render the legislation constitutional."); Norquist v. Zeuske, 211 Wis. 2d 241, 250, 564 N.W.2d 748, 752 (1997) (A court "must not construe a statute to violate the constitution if it can possibly be construed consistent with the constitution.") (emphasis added); Demmith v. Wis. Judicial Conference, 166 Wis. 2d 649, 664 n.13, 480 N.W.2d 502 (1992) (A court applies a saving interpretation "if at all possible, in a manner that will preserve the statute as a constitutional enactment."); Baird v. La Follette, 72 Wis. 2d 1, 5, 239 N.W.2d 536, 538 (1976) ("Where there is serious doubt of constitutionality, we must look to see whether there is a construction of the statute which is reasonably possible which will avoid the constitutional question."); Ashwander, 297 U.S. at 348 (Brandeis, J., concurring) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").

 See, e.g., Adams v. Northland Equip. Co., Inc., 2014 WI 79, ¶ 46, 356 Wis. 2d 529, 850 N.W.2d 272 ("[W]hen given alternative statutory interpretations, we will select the interpretation that results in a constitutionally sufficient statute."); State ex rel. Strykowski v. Wilkie, 81 Wis. 2d 491, 526, 261 N.W.2d 434 (1978) ("Given a choice of reasonable interpretations of a statute, this court must select the construction which results in constitutionality."); Clark v. Martinez, 543 U.S. 371, 381 (2005) (If there are multiple "competing plausible interpretations" of a statute, the canon of constitutional avoidance instructs a court to choose the constitutional application based on the "reasonable presumption that Congress did not intend the alternative which raises serious doubts."); Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

 See Wis. Stat. § 990.001(11), which provides for sever-ability as follows:
SEVERABILITY. The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application.
See also Adrian Vermeule, Saving Constructions, 85 Geo L.J. 1945, 1950-51 (1997) ("[A]ll forms of severability are triggered only by a ruling on the merits of a constitutional question .... "); Kevin C. Walsh, Partial Unconstitutionality, 85 N.Y.U. L. Rev. 738, 746-47 (2010) ("[I]f the statute has unconstitutional applications, they are severable from the constitutional applications.") (citations omitted).
Severability is not without limits. Thus, " [ascertaining the severability of an unconstitutional provision from the remainder of a statute requires a determination of legislative intent" and "the viability of the severed portion standing alone." Burlington N., Inc. v. City of Superior, 131 Wis. 2d 564, 580-81, 388 N.W.2d 916 (1986); Ayotte, 546 U.S. at 330 ("[T]he touchstone for any decision about [a severability] remedy is legislative intent, for a court cannot 'use its remedial powers to circumvent the intent of the legislature.'") (quoting Califano v. Westcott, 443 U.S. 76, 94 (1979) (Powell, J., concurring in part and dissenting in part)).

 Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320, 329 (2006) (quoting Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 289 (1921)).

 See also Polk Cty. v. State Public Defender, 188 Wis. 2d 665, 674, 524 N.W.2d 389 (1994); State v. Beno, 116 Wis. 2d 122, 136-37, 341 N.W.2d 668 (1984).

 When the Crime Victims Amendment was adopted, 12 other states' constitutions recognized victims rights. Currently, 32 states have amended their constitutions to include a provision relating to crime victims. The remaining 18 states, the Federal government, and the District of Columbia have statutes that recognize victims' rights.
For a compendium containing each jurisdiction's laws relating to the rights of crime victims, see https://law.lclark. edu/live/news/23544-victims-rights-law-by-state?.
*206 For a discussion of the victims' rights movement and the issues presented, see Shirley S. Abrahamson, Redefining Roles: The Victims' Rights Movement, 1985 Utah L. Rev. 517.

 The Crime Victims Amendment was adopted by two consecutive Wisconsin legislatures. See 1991 S.J.R. 41, 1993 S.J.R. 3. Not all legislators favored it.

 See Chapter 219, Laws of 1979 (creating Chapter 950 of the Wisconsin Statutes, which established a statutory bill of rights for victims and witnesses of crimes). Chapter 950, including the bill of rights, was substantially amended by 1997 Act 181 after the ratification of the state constitution Crime Victims Amendment.

 Gary Watchke, Wis. Legis. Reference Bureau Brief 93-4, Constitutional Amendments and Advisory Referenda to be Considered by Wisconsin Voters April 6, 1993, at 3 (Mar. 1993) (available on the Legislative Reference Bureau's website, http://lrbdigital.legis.wisconsin.gov/digital/collection/pl6831col 12/id/592/rec/5).

 See Brief of Respondent-Appellant Crime Victims Rights Board at 20-21.

 Memorandum from Racine County District Attorney Lennie Weber to Senator Barbara Ulichny, Feb. 24, 1992 (available in the drafting file for 1991 S.J.R. 41). Senator Ulichny was the Joint Resolution's principal author and requested District Attorney Lennie Weber to negotiate certain terms of the bill with the State Public Defender's Office and Senator Lynn Adelman.
A proposed constitutional amendment, 2017 A.J.R. 47, currently pending before the Wisconsin State Assembly, would replace the phrase "privileges and protections" with the word "rights."

 Gary Watchke, Wis. Legis. Reference Bureau Brief 93-4, Constitutional Amendments and Advisory Referenda to be Considered by Wisconsin Voters April 6, 1993, at 4 (Mar. 1993) (available on the Legislative Reference Bureau's website, http://Irbdigital.legis.wisconsin.gov/digitaFcollection/pl6831col 12/id/592/rec/5). See Letter from Senator Adelman to Dr. Rupert Theobold, head of the Legislative Reference Bureau, Mar. 12, 1992 (available in the drafting file for 1991 S.J.R. 41); Memorandum from Racine County District Attorney Lennie Weber to Senator Barbara Ulichny, Feb. 24, 1992 (available in the drafting file to 1991 S.J.R. 41); Ken Eikenberry, Victims of Crime /Victims of Justice, 34 Wayne L. Rev. 29, 46 (1987 — 1988) (this law review article is part of the drafting file and was apparently influential in the drafting of the Amendment: "A victims' rights amendment could not, without expressly doing so, curtail any rights granted to defendants.").

 See Letter from Senator Adelman to Dr. Rupert Theobold, head of the Legislative Reference Bureau, Mar. 12, 1992 (available in the drafting file for 1991 S.J.R. 41).
Some other states' constitutional provisions guaranteeing certain rights to crime victims also expressly dispel the notion that protection of a victim's rights would diminish the constitu *209 tional rights of the accused. See, e.g., Ind. Const. Art. 1, § 13(b) (grants rights to victims "to the extent that exercising these rights does not infringe upon the constitutional rights of the accused").

 Gary Watchke, Wis. Legis. Reference Bureau Brief 93-4, Constitutional Amendments and Advisory Referenda to be Considered by Wisconsin Voters April 6, 1993, at 2 (Mar. 1993) (available on the Legislative Reference Bureau's website, http://lrbdigital.legis.wisconsin.gov/digital/collection/pl6831col 12/id/592/rec/5).

 See Brief of Respondent-Appellant Crime Victims Rights Board at 18 ("[T]he people of Wisconsin have amended the Wisconsin Constitution in a way that restricted how judges may treat crime victims in court proceedings and that expressly empowered the Legislature to provide remedies for violations of victims' rights.").

 Memorandum from Racine County District Attorney Lennie Weber to Senator Barbara Ulichny, Feb. 24, 1992 (available in the drafting file for 1991 S.J.R. 41).

 See Legislative Reference Bureau Analysis to 1993 S.J.R. 3 ("The legislature must provide remedies for the violation of the new section.").

 Schilling v. Crime Victims Rights Bd., 2005 WI 17, ¶¶ 1, 27, 278 Wis. 2d 216, 692 N.W.2d 623.

 The legislature responded to the Schilling decision by enacting 2011 Wis. Act 283, § 2, creating Wis. Stat. § 950.04(lv)(ag) and statutorily recognizing a victim's right to be treated with fairness, dignity, and respect for privacy by public officials. See drafting file for 2001 A.B. 232, 2011 Wis. Act 283. Section 2 of the Act provides as follows:
Section 2. 950.04(lv)(ag) of the statutes is created to read:
950.04(lv)(ag) To be treated with fairness, dignity, and respect for his or her privacy by public officials, employees, or agencies. This *211 paragraph does not impair the right or duty of a public official or employee to conduct his or her official duties reasonably and in good faith.

 For a discussion of the Crime Victims Amendment and the open records law, see Democratic Party of Wis. v. DOJ, 2016 WI 100, ¶¶ 4, 14, 29, 372 Wis. 2d 460, 888 N.W.2d 584.

 The Crime Victims Rights Board offers four main arguments supporting the constitutionality of the challenged statutes:
(1) The Board does not review the correctness of a judge's exercise of discretion in scheduling when a complaint is filed. Rather the Board determines whether the judge's exercise of scheduling discretion was consistent with the constitutional rights of a crime victim and the limitations on judicial discretion created by the Crime Victims Amendment and Chapter 950.
*213 (2) Because the Board's report and recommendations are reviewable by a court under Wis. Stat. Chapter 227, the legislative and executive branches do not exercise unfettered power over a member of the judiciary.
(3) A court's restricting the Board's power to provide a remedy for a judge's violation of a crime victim's rights beyond referral to the Judicial Commission is contrary to the Crime Victims Amendment. Such a restriction deprives crime victims of any remedy in a case in which violation of a crime victim's right does not rise to the level of a violation in the jurisdiction of the Judicial Commission. Supreme Court Rule 60.04(l)(h) requires a judge to "dispose of all judicial matters promptly and efficiently." The Board acknowledges that delay that violates the right of a crime victim under the Constitution and Wis. Stat. § 950.04(lv) may not violate the Code of Judicial Conduct, which requires willful violation. The Board asserts that § 950.04(lv) provides broader protections for victims than the Code of Judicial Conduct.
(4) The Board's issuance of a Report and Recommendation pursuant to Wis. Stat. § 950.09(3) setting forth best practices for protecting a victim's right to speedy disposition in the instant case is a remedy the legislature is authorized to adopt under the Crime Victims Amendment. This remedy does not deprive the judge of any right or alter his or her legal status or interfere with his or her functioning as a judge.

 See Brief of Respondent-Appellant Crime Victims Rights Board at 20-22.

 Wisconsin Stat. § 15.255(2)(a)-(c) creating the Crime Victims Rights Board provides, inter alia, as follows:
(2) Crime victims rights board, (a) There is created a crime victims rights board which is attached to the department of justice under s. 15.03.
(b) The crime victims rights board shall be composed of 5 members as follows:
1. One district attorney holding office in this state.
2. One representative of local law enforcement in this state.
3. One person who is employed or contracted by a county board of supervisors under s. 950.06 to provide services for victims and witnesses of crimes.
4. Two members, not employed in law enforcement, by a district attorney or as specified in subd. 3., who are citizens of this state.
(c) The members of the crime victims rights board specified in par. (b)2. and 3. shall be appointed by the attorney general. One of the members specified in par. (b)4. shall be appointed by the crime victims council and the other member shall be appointed by the governor. The member specified in par. (b)l. shall be appointed by the Wisconsin District Attorneys Association.

 Wisconsin Stat. § 15.03 describes the Board's limited attachment to the Department of Justice as follows:
*215 Any . . . board attached ... to a department. . . shall be a distinct unit of that department. . . [and] shall exercise its powers, duties and functions prescribed by law .... independently of the head of the department.. . , but budgeting, program coordination and related management functions shall be performed under the direction and supervision of the head of the department....
"Actions of the board are not subject to approval or review by the attorney general." Wis. Stat. § 950.09(4).

 For the rules promulgated by the Board, see Wis. Admin. Code § CVRB Ch. 1 (June 2000).

 See Wis. Stat. 950.09(2) ("A party may not request the board to review a complaint under this subsection until the department has completed its action on the complaint under s. 950.08(3)."); Wis. Adm. Code § CVRB 1.04(2) ("All complaints [to the Board] shall be prepared on a complaint form obtained from the mediator."

 The statute uses the phrase "public officials, employees, or agencies." Because I conclude that judges are not "employees" or "agencies," I consider only whether judges are "public officials" under the statute.

 I could find no definition of "public officials" that applies in all statutes. For definitions of "state public office" and "state public official" for purposes of the Code of Ethics for Public Officials and Employees, see Wis. Stat. § 19.42(13) and (14).

 Dep't of Corrections v. Schwarz, 2005 WI 34, ¶ 14, 279 Wis. 2d 223, 693 N.W.2d 703 (internal quotation marks and citations omitted); see also Teschendorf v. State Farm Ins. Cos., 2006 WI 89, ¶ 74, 293 Wis. 2d 123, 717 N.W.2d 258 (Prosser, J., concurring) ("Ambiguity in an insurance policy may arise in different ways. First, the language of the disputed provision may be ambiguous because the import of the words is uncertain or the impact of the words is uncertain with respect to unusual facts. Second, a provision that is unambiguous when viewed in isolation may become ambiguous when considered in the context of the entire policy.") (Emphasis added.)

 American Bar Association, How Courts Work: What is Mediation?, http://www.americanbar.org/gronps/public_ education/resources/law_related_education_network/how_courts _work/mediation_whatis.html

 See Brief of Respondent-Appellant Crime Victims Rights Board at 38 (Noting that the circuit court identified as an issue requiring an evidentiary hearing the "impact on Judge Ga-bler's communications with [the Department] and the [Crime Victims Rights board] of the Code of Judicial Conduct's restrictions on ex parte communications.").

 United States v. Roebuck, 271 F. Supp. 2d 712, 718 (D.V.I. 2003) (citing United States v. Morgan, 313 U.S. 409, 422 (1941); Fayerweather v. Ritch, 195 U.S. 276, 306-07 (1904)); see also State ex rel. Kaufman v. Zakaib, 535 S.E.2d 727, 734-737 (W. Va. 2000); In re Enforcement of Subpoena, 972 N.E.2d 1022, 1027-34 (Mass. 2012) (recognizing a judicial deliberative privilege to refuse to be a witness based on concerns for finality, quality and integrity of decision-making, and the independence and impartiality of the judiciary); United States v. Cross, 516 F. Supp. 700, 707 (M.D. Ga. 1981), aff'd, 742 F.2d 1279 (11th Cir. 1984), vacated on other grounds for further consideration, 468 *219 U.S. 1212 (1984) (because "judges are under no obligation to divulge the reasons that motivated them in their official acts[,] the mental processes employed in formulating the decision may not be probed").
Allowing such probing could undermine the integrity of the judicial system. Roebuck, 271 F. Supp. 2d at 722 (citing Terrazas v. Slagle, 142 F.R.D. 136, 139 (W.D. Tex. 1992); accord United States v. Dowdy, 440 F. Supp. 894, 896 (W. Va. 1977) ("Should a judge be vulnerable to subpoena as to the basis of every action taken by him, the judiciary would be open to frivolous attacks upon its dignity and integrity, and interruption of its ordinary and proper functioning.") (internal quotation marks & quoted source omitted).

 Wisconsin Stat. § 165.25(3) provides that the Department of Justice shall "[c]onsult and advise with the district attorneys when requested by them in all matters pertaining to the duties of their office."

 See Wis. Stat. § 165.25(1).

 See Wis. Stat. § 165.25(6). In the instant case, however, the Department represents the Crime Victims Rights Board before this court against a judge in a lawsuit involving a crime victim's complaint against the judge; the Department does not represent the judge.

 See also Clark v. Martinez, 543 U.S. 371, 385 (2005) ("The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as a means of choosing between them. See, e.g., Almendarez-Torres v. United States, 523 U.S. 224, 237-238 (1998); United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U.S. 366, 408 (1909)."). See also Chicago & N.W. Ry. Co. v. Pub. Serv. Comm'n, 43 Wis. 2d 570, 577-78, 169 N.W.2d 65, 68 (1969) ("[I]f a statute is open to more than one reasonable construction, the construction which will accomplish the legislative purpose and avoid unconstitutionality must be adopted.").

 See Brief of Respondent-Appellant Crime Victims Rights Board at 41 — 42.

 Judge Gabler takes this position as a matter of statutory interpretation. See Brief of Petitioner-Respondent The Honorable William M. Gabler, Sr. at 22 — 24.

 Judge Gabler interprets Wis. Stat. § 950.09(2) and Wis. Admin. Code § CVRB 1.06(1) as prohibiting the Board from investigating a crime victim complaint until after there has been a finding of probable cause and argues that the Board violated the confidentiality of Judge Gabler's file contrary to § 950.095(l)(a). See Brief of Petitioner-Respondent The Honorable William M. Gabler, Sr. at 30-32.

 Chapter 938 of the Wisconsin Statutes is entitled the Juvenile Justice Code. Section 938.0 l(2)(g) explains that the victim of a criminal act perpetrated by a juvenile is afforded the same rights as if the actor were an adult.

 See State ex rel. Gebarski v. Circuit Court, 80 Wis. 2d 489, 495, 259 N.W.2d 531 (1977) (citing Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433 (1932) (a natural presumption exists that an identical term used multiple times in different parts of a legislative act is intended to have the same meaning, but the presumption is not rigid).

 Article VII, Section 11 of the Wisconsin Constitution provides:
Each justice or judge shall be subject to reprimand, censure, suspension, removal for cause or for disability, by the supreme court pursuant to procedures established by the legislature by law. No justice or judge removed for cause shall be eligible for reappointment or temporary service. This section is alternative to, and cumulative with, the methods of removal provided in sections 1 and 13 of this article and section 12 of article XIII. (Emphasis added.)

 Supreme Court Rules are printed in volume 6 of the Wisconsin Statutes.

 Compare S. Amend. 1 to 1997 A.B. 342 with 1997 Wis. Act 181.

 See Brief of Respondent-Appellant Crime Victims Rights Board at 22.

 The phrase "public official" also appears in Wis. Stat. § 950.04(lv)(dr), the crime victims bill of rights, relating to a public official's duty to protect a victim's personal identity. A victim's personal identity is protected in judicial records.
This court has adopted rules under Wis. Stat. § 751.12 governing the protection of the personal identity of crime victims. In appellate procedure, the protection of personal identity is governed by Wis. Stat. § (Rule) 809.86. In the circuit courts, attorneys may file a motion to seal information, including crime victim information. See Wis. Stat. § 801.21; Gerald P. Ptacek & Marcia Vandercook, Court Filings: New Rules to Protect Confidential Information in Court Records, Wis. Lawyer, May 2016, at 12.

 See Brief of Respondent-Appellant Crime Victims Rights Board at 22.

 Wisconsin Stat. § 950.10(2) provides as follows:
A failure to provide a right, service or notice to a victim under this chapter or ch. 938 or under Article I, section 9m, of the Wisconsin constitution is not ground for an appeal of a judgment of a conviction and is not grounds for any court to reverse or modify a judgment of conviction or sentence.
See State v. Grindemann, 2002 WI App 106, ¶ 19 n.5, 255 Wis. 2d 632, 648 N.W.2d 507 (State conceded that failure to conform to statutory provisions governing crime victim rights is not grounds for an appeal of a sentence, citing Wis. Stat. § 950.10(2)).

 See Reply Brief of Respondent-Appellant Crime Victims Rights Board at 9.

 See, e.g., Ford v. Kenosha Cty, 160 Wis. 2d 485, 498, 466 N.W.2d 646 (1991); Scarpaci v. Milwaukee Cty., 96 Wis. 2d 663, 694-95, 292 N.W.2d 816 (1980); Stump v. Sparkman, 435 U.S. 349 (1978); Pierson v. Ray, 386 U.S. 547 (1967); Wis. Stat. § 893.80(4).

 The Capital Times explained that prior to the adoption of the Crime Victims Amendment, then-Assembly Minority Leader David Prosser worried that"[i]f crime victims who are given specific constitutional rights believe the system has failed to protect them adequately, district attorneys, judges and other criminal justice officers could be sued . . . ." Victim Rights on Crowded Ballot, The Capital Times, Mar. 8, 1993.

 See Brief of Respondent-Appellant Crime Victims Rights Board at 22.

 See Brief of Respondent-Appellant Crime Victims Rights Board at 14 — 15.