Patrick G. SCHILLING, Petitioner-Respondent,

v.

STATE OF WISCONSIN CRIME VICTIMS RIGHTS BOARD, Respondent-Appellant.

Supreme Court

*No. 03–1855. Oral argument November 9, 2004.—Decided February 23, 2005.*

2005 WI 17

(Also reported in 692 N.W.2d 623.)

216

For the respondent-appellant the cause was argued by *Bruce A. Olsen,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the petitioner-respondent there was a brief by *Thomas M. Pyper, Cynthia L. Buchko* and *Whyte Hirschboeck Dudek S.C.,* Madison, and oral argument by *Thomas M. Pyper.*

A joint amicus curiae brief was filed (in the court of appeals) by *Eva L. Shiffrin,* Madison, on behalf of the Wisconsin Coaltion Against Sexual Assault, Inc.; *Joanna Tucker Davis* and *Douglas E. Beloof,* Portland, OR, on behalf of the National Crime Victim Law Institute; and the Wisconsin Coalition Against Domestic Violence, Madison.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. The first sentence of Article I, Section 9m of the Wisconsin Constitution states: "This state shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy." We recognize that according crime victims fairness, dignity and respect is very important to a just enforcement of the criminal code of the State of Wisconsin. The legislature has recognized the importance of victims' rights as well, by enacting Wis. Stat. § 950.04. However, because we conclude that this constitutional provision is a statement of purpose that describes the policies to be promoted by the State and does not provide an enforceable, self-executing right, we affirm the circuit court decision reversing the private reprimand of District Attorney Patrick Schilling issued by the Crime Victims Rights Board under Wis. Stat. § 950.09(2)(a) (1999–2000).[1]

## I. BACKGROUND

¶ 2. Jennifer Hansen Marinko (Hansen) was murdered in Price County in October 1999. She was survived by her two children, her mother and nine siblings. Patrick Schilling, District Attorney for Price County, prosecuted Daniel Marinko (Marinko) in connection with her death, and on March 8, 2001, Marinko was convicted of both first-degree intentional homicide and armed burglary with a dangerous weapon.

¶ 3. At the sentencing hearing held on April 12, 2001, Schilling played part of the tape of the 911 telephone call that Hansen's son had made to the police after discovering his mother dead. While Schilling made sure that Hansen's children would not be present at the

---

[1] All further statutory references are to the 1999–2000 statutes, unless otherwise noted.

sentencing hearing, he did not inform other family members that he was going to play the tape or otherwise give them an opportunity to leave the courtroom before he played it. Schilling turned off the tape before it had finished playing because he recognized that it was having a dramatic effect on the family members.

¶ 4. In July 2001, five of Hansen's survivors (collectively "complainants") filed a complaint against Schilling with the Crime Victims Rights Board (Board).[2] After determining that there was probable cause to believe that Schilling had violated the complainants' crime victims' rights, the Board held an evidentiary hearing on May 30 and 31, 2002.

¶ 5. In a written decision, the Board found that the tape of the 911 call was "highly upsetting" and that "Schilling knew of the tape's powerful emotional content . . . [which] was the reason for its presentation at the sentencing hearing." The Board further found that "Schilling intended to create an emotional event at the sentencing hearing for the purpose of influencing the sentencing decision, which, unfortunately, was at the expense of [Hansen's] family."

¶ 6. Citing Article I, Section 9m of the Wisconsin Constitution and Wis. Stat. § 950.01 for the principle that "[v]ictims of crime are entitled to be treated with fairness, dignity, respect, courtesy and sensitivity," the Board found that the complainants had "met their burden to prove by clear and convincing evidence that [] Schilling failed to treat them with fairness, dignity, respect, courtesy and sensitivity on April 12, 2001, when he played the 911 tape made on the day of

─────────────

[2] The complaint was also filed against the Price County Victim/Witness Coordinator. The Board determined that probable cause did not exist to believe that the Victim/Witness Coordinator violated the complainants' rights.

[Hansen's] death at the sentencing hearing." Citing its authority under Wis. Stat. § 950.09(2)(a), the Board ordered a private reprimand of Schilling "for violating the complainants' rights to be treated with fairness, dignity, respect and sensitivity in the playing of the 911 tape at the April 12, 2001, sentencing hearing."

¶ 7. Schilling sought judicial review of the Board's decision pursuant to Wis. Stat. §§ 227.52, 227.53 and 227.57 in the circuit court for Dane County. The circuit court, the Honorable Michael N. Nowakowski presiding, reversed the Board's decision. The Board then appealed to the court of appeals, and we granted the court of appeals' certification.

## II. DISCUSSION

¶ 8. Pursuant to Wis. Stat. § 950.09(2)(a), the Board may "[i]ssue private and public reprimands of public officials, employees or agencies that violate the rights of crime victims provided under this chapter, ch. 938, and article I, section 9m, of the Wisconsin constitution." At issue in this case is whether the first sentence of Article I, Section 9m of the Wisconsin Constitution, which reads, "This state shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy," creates a "right" that the Board may enforce under § 950.09(2)(a), or whether it is descriptive of policies to be furthered by the State.

¶ 9. The Board argues that the first sentence of Article I, Section 9m of the Wisconsin Constitution is self-executing and thereby provides crime victims an enforceable right to be treated with fairness, dignity and respect for their privacy. Schilling counters that the language in question instead serves to articulate general policies and does not create enforceable rights. We conclude that the constitutional language in question is

222

a statement of purpose that describes the policies to be promoted by the State and does not create an enforceable, self-executing right.[3]

A. Standard of Review

¶ 10. This is an appeal following a decision by the Board, which is an administrative agency. We review the Board's decision, not the circuit court's. *See Beecher v. LIRC,* 2004 WI 88, ¶ 22, 273 Wis. 2d 136, 682 N.W.2d 29.

¶ 11. Both parties state that our review in the present case is de novo, relying on the court of appeals decision in *Zip Sort, Inc. v. Wisconsin Dep't of Revenue,* 2001 WI App 185, 247 Wis. 2d 295, 634 N.W.2d 99. While we agree that our review of the Board's decision is de novo, we disagree with the parties' reliance on *Zip Sort.*

¶ 12. The *Zip Sort* decision addressed the standard of review of an administrative agency's interpretation of a statute, explaining that there are three possible levels of deference in a review of an agency's statutory interpretation and describing the circumstances under which each level of deference is appropriate. *Zip Sort,* 247 Wis. 2d 295, ¶ 11–14. However, the instant case presents a question of constitutional, not statutory, construction. While the Board interpreted Article I, Section 9m of the Wisconsin Constitution pursuant to its duties conferred by Wis. Stat. § 950.09,

---

[3] Due to this conclusion, we do not reach the parties' arguments as to whether the Board's authority to issue private reprimands invades prosecutorial discretion or whether the first sentence of Article I, Section 9m of the Wisconsin Constitution is unconstitutionally vague.

it does not follow that we analyze the Board's decision in this case as we would an agency interpretation of a statute. *See Beecher,* 273 Wis. 2d 136, ¶ 26. Instead, because construing the constitution is a task ultimately for the courts, we give no deference to the Board's interpretation of Article I, Section 9m of the Wisconsin Constitution. *Knights of Columbus v. State,* 151 Wis. 2d 404, 409, 444 N.W.2d 447 (Ct. App. 1989). Our review, therefore, is de novo.

B. Interpreting Article I, Section 9m of the Wisconsin Constitution

¶ 13. The Wisconsin Constitution was amended in 1993 to include Article I, Section 9m. We have explained that the purpose of construing a constitutional amendment is "to give effect to the intent of the framers and of the people who adopted it." *State v. Cole,* 2003 WI 112, ¶ 10, 264 Wis. 2d 520, 665 N.W.2d 328 (quoting *Kayden Indus., Inc. v. Murphy,* 34 Wis. 2d 718, 729–30, 150 N.W.2d 447 (1967)). The question presented in the present case is whether the first sentence of Article I, Section 9m of the Wisconsin Constitution was intended as a statement of purpose that articulates the importance of recognizing crime victim rights, or whether it was intended to provide crime victims with an enforceable right that is self-executing.

¶ 14. Like statutes, constitutional provisions may include statements of purpose that use broad language. *See State ex rel. Columbia Corp. v. Pacific Town Bd.,* 92 Wis. 2d 767, 772, 286 N.W.2d 130 (Ct. App. 1979). As with a statute's statement of purpose, a constitutional section's statement of purpose does not provide for an

independent, enforceable claim, as it is not in itself substantive. *See id.* at 779 (citing *Smith v. Brookfield,* 272 Wis. 1, 7, 74 N.W.2d 770 (1956)). Such a statement of purpose is instead instructive of intent and guides implementation. *See id.* (citing *Wisconsin's Envtl. Decade v. PSC,* 69 Wis. 2d 1, 18, 230 N.W.2d 243 (1975)).

¶ 15. We have also explained that "[a] constitutional provision is self-executing if no legislation is necessary to give effect to it, and if there is nothing to be done by the legislature to put it in operation." *Kayden,* 34 Wis. 2d at 731 (citation omitted). However, a statement of purpose, policy or principle is not self-executing. 16 Am. Jur. 2d *Constitutional Law* § 102 (1998) (explaining that a constitutional provision is "not self-executing when it merely lays down general principles or a line of policy without supplying the means by which such policy or principles are to be effectuated").

¶ 16. To ascertain whether the first sentence of Article I, Section 9m of the Wisconsin Constitution was intended to serve as a statement of purpose or was intended to provide an enforceable, self-executing right requires constitutional interpretation. We examine three sources in interpreting a constitutional provision: "the plain meaning of the words in the context used; the constitutional debates and the practices in existence at the time of the writing of the constitution; and the earliest interpretation of the provision by the legislature as manifested in the first law passed following adoption." *Wisconsin Citizens Concerned for Cranes & Doves v. DNR,* 2004 WI 40, ¶ 44, 270 Wis. 2d 318, 677 N.W.2d 612 (citations omitted); *accord, e.g., Cole,* 264 Wis. 2d 520, ¶ 10. We have broadly understood the second of these sources, the

225

constitutional debates and practices in existence contemporaneous to the writing, to include the general history relating to a constitutional amendment, *see State ex rel. Unnamed Person No. 1 v. State,* 2003 WI 30, ¶¶ 27, 30–36, 260 Wis. 2d 653, 660 N.W.2d 260, as well as the legislative history of the amendment, *see Cole,* 264 Wis. 2d 520, ¶¶ 10, 36–41.

¶ 17. Applying this analysis, we note first that the plain meaning of the first sentence of Article I, Section 9m of the Wisconsin Constitution in context indicates that it serves as a statement of purpose and does not create enforceable, self-executing rights. Article I, Section 9m of the Wisconsin Constitution provides:

> This state shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy. This state shall ensure that crime victims have all of the following privileges and protections as provided by law: timely disposition of the case; the opportunity to attend court proceedings unless the trial court finds sequestration is necessary to a fair trial for the defendant; reasonable protection from the accused throughout the criminal justice process; notification of court proceedings; the opportunity to confer with the prosecution; the opportunity to make a statement to the court at disposition; restitution; compensation; and information about the outcome of the case and the release of the accused. The legislature shall provide remedies for the violation of this section. Nothing in this section, or in any statute enacted pursuant to this section, shall limit any right of the accused which may be provided by law.

The provision in question, "This state shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy," opens the section. *See id.* It uses very broad terms to describe how the State must treat crime victims. *See id.* The subsequent sentence

226

requires the State to "ensure" that crime victims have a number of "privileges and protections," which are articulated in detail. *See id.* This structure, opening the section with broad indications of how crime victims should be treated, followed by a detailed list of privileges and protections to which victims are entitled, shows that the first sentence was intended to serve as a general guide or statement of policy regarding victims' rights, whereas the second sentence was intended to provide an outline of the specific rights that the State shall afford crime victims. *See id.*

¶ 18. Next, we examine the constitutional amendment's history. In an early attempt to secure the initial legislative approval needed to adopt a state constitutional victims' rights amendment, Senator Barbara Ulichny introduced 1989 Senate Joint Resolution 94.[4] With her drafting request to the Legislative Reference Bureau (LRB), Senator Ulichny attached two articles written by other states' attorneys general as background material for the drafter that provide some evidence of the legislature's intent. *See* Don Siegelman & Courtney W. Tarver, *Victims' Rights in State Constitutions,* 1 Emerging Issues in St. Const. L. 163 (1988);

---

[4] Article XII, Section 1 of the Wisconsin Constitution provides for amending the constitution. For an amendment to the Constitution to become effective, it must be adopted by two successive legislatures and then ratified by voters. Wis. Const. art. XII, § 1; *see generally* Wisconsin Briefs, *Constitutional Amendments and Advisory Referenda To Be Considered by Wisconsin Voters April 6, 1993,* LRB-93–WB-4, at 1 (March 1993) [hereinafter Wisconsin Briefs, *Constitutional Amendments*]. To create Article I, Section 9m of the Wisconsin Constitution, the legislature adopted 1991 Senate Joint Resolution 41 and 1993 Senate Joint Resolution 3, and the amendment proposal was submitted to voters on April 6, 1993. *See* Wisconsin Briefs, *Constitutional Amendments, supra,* at 1.

Ken Eikenberry, *Victims of Crime/Victims of Justice,* 34 Wayne L. Rev. 29 (1987); Legislative Reference Bureau Drafting Record for 1989 S.J.R. 94.

¶ 19. From this background material, we learn that 1989 Senate Joint Resolution 94 was introduced in the midst of a larger, nationwide movement to recognize the rights of crime victims, particularly through the amendment of state constitutions. Siegelman & Tarver, *supra,* at 163–64, 170–71. The materials note that crime victims were being treated insensitively and with a lack of consideration, even by well-meaning public agencies. *See* Siegelman & Tarver, *supra,* at 169; Eikenberry, *supra,* at 31–32. Moreover, it was believed that rights of crime victims needed to be addressed both out of a sense of fundamental fairness and justice to victims, *see* Siegelman & Tarver, *supra,* at 172; Eikenberry, *supra,* at 30, 32–33, as well as to enhance the effectiveness of the criminal justice system, because the cooperation of crime victims and witnesses was understood to be central to law enforcement, *see* Siegelman & Tarver, *supra,* at 169; Eikenberry, *supra,* at 31–32. Lois Haight Herrington, who chaired a presidential task force on victims of crime, explained that her task force concluded that:

> the treatment of crime victims in America was a national disgrace. Ignored, mistreated, or blamed, the innocent victims had been handled like photographs or fingerprints—mere evidence to be manipulated at the criminal justice system's convenience. By the end of the ordeal, many victims vowed that they would never again become embroiled in the system, and that they would tell their friends and loved ones to stay away from the courts. Just as a pebble dropped in a pool causes rippling all across the water, the mistreatment of victims spread resentment and distrust of the justice system throughout entire communities. *We saw that*

> *this insensitivity toward victims was not only unjust, it was unwise.* The criminal justice system is absolutely dependent upon the cooperation of crime victims to report and testify. Without their help, the system cannot hold criminals accountable and stem the tide of future crime.

Eikenberry, *supra,* at 30 (emphasis added).

¶ 20. With this background established, we turn to the history of the actual language adopted. The legislature considered and rejected identical language for Article I, Section 9m of the Wisconsin Constitution in 1991 Assembly Joint Resolution 4 and 1989 Assembly Joint Resolution 138, both of which included a right to fairness and respect in a list of specifically enumerated rights:

> The rights of victims of crime shall be defined and protected by law and shall include: *the right to be treated with fairness and respect for their dignity and privacy throughout the criminal justice process;* the right to timely disposition of the case following arrest of the accused; the right to be reasonably protected from the accused throughout the criminal justice process; the right to notification of court proceedings; the right to attend trial and all other court proceedings that the accused has the right to attend; the right to confer with the prosecution; the right to make a statement to the court at sentencing; the right to restitution and compensation; and the right to information about the disposition of the case, including the conviction, sentence, imprisonment and release of the accused.

1991 A.J.R. 4 (emphasis added); 1989 A.J.R. 138 (emphasis added). The legislature rejected this language, deciding to remove the reference to fairness, dignity and respect from the list of enumerated rights and move it to a separate sentence. *See* Wis. Const. art. I,

§ 9m. We infer from that decision that the broad language of fairness, dignity and respect in the amendment's first sentence was intended to have a different significance than the language specifically articulating rights in the second sentence.

¶ 21. The statutory structure that was in place prior to the adoption of Article I, Section 9m of the Wisconsin Constitution provides evidence of the manner in which the amendment's first and second sentences were intended to differ in significance. The legislature had created Chapter 950, "Rights of victims and witnesses of crimes," in 1980. Section 4, ch. 219, Laws of 1979. On its face, Article I, Section 9m of the Wisconsin Constitution appears to have adopted the structure of the pre-amendment codification of victims' rights. *See* 16 Am. Jur. 2d *Constitutional Law* § 90 (1998) ("A constitutional provision must be presumed to have been framed and adopted in the light and understanding of . . . existing laws and with reference to them."); 16 C.J.S. *Constitutional Law* § 34 (1984) ("Where a constitutional provision similar or identical to that contained in a . . . statute . . . is adopted, it is presumed that such provision was adopted with the construction previously placed on it."). Wisconsin Stat. § 950.01 (1991–92), entitled "Legislative intent," read in language very similar to the first sentence of Article I, Section 9m of the Wisconsin Constitution: "[T]he legislature declares its intent, in this chapter, to ensure that all victims . . . of crime are treated with dignity, respect, courtesy and sensitivity."[5] Then, at Wis. Stat.

---

[5] Wisconsin Stat. § 950.01 (1991–92) provided in whole:

In recognition of the civic and moral duty of victims and witnesses of crime to fully and voluntarily cooperate with law enforcement and prosecutorial agencies, and in further recognition of the

§ 950.04 (1991–92), entitled "Basic bill of rights for victims and witnesses," specific rights of victims and witnesses were enumerated in detail,[6] as they are in the second sentence of Article I, Section 9m of the Wisconsin Constitution.

¶ 22. Not only is the structure of the constitutional amendment on its face parallel to the pre-existing codification, the Legislative Reference Bureau (LRB)[7] has explained that the constitutional amend-

---

continuing importance of such citizen cooperation to state and local law enforcement efforts and the general effectiveness and well-being of the criminal justice system of this state, the legislature declares its intent, in this chapter, to ensure that all victims and witnesses of crime are treated with dignity, respect, courtesy and sensitivity; and that the rights extended in this chapter to victims and witnesses of crime are honored and protected by law enforcement agencies, prosecutors and judges in a manner no less vigorous than the protections afforded criminal defendants.

[6] Wisconsin Stat. § 950.04 (1991–92) provided for such specific rights as: to be informed of a case's final disposition; to be notified under specified circumstances if a defendant is released from custody; to be notified of pardon applications; to be notified under specified circumstances if a court proceeding is canceled; to have the court consider a crime's impact on the victim; to be protected from harm or threats arising out of cooperation with law enforcement or prosecutor efforts; to be informed of financial and other assistance available to crime victims; when a witness fee is available, to be informed of the procedure to apply for and receive such fee; when possible, to be provided a secure waiting area during court proceedings; to have stolen or other personal property expeditiously returned by law enforcement agencies; to be provided with appropriate employer intercession services; and to be entitled to speedy disposition of the case.

[7] Legislative Reference Bureau (LRB) statements carry some weight because the agency "is deeply involved in the legislative drafting process, as LRB attorneys draft all bills and resolutions that are introduced into the legislature." *State v.*

ment was adopted with the Chapter 950 provisions in mind. *See* Wisconsin Briefs, *Constitutional Amendments and Advisory Referenda To Be Considered by Wisconsin Voters April 6, 1993,* LRB-93–WB-4, at 3–4 (March 1993). A LRB publication regarding the amendment explained that advocates of the amendment believed it was "necessary to give weight to the statutory language," *id.* at 3, and included a rationale for the amendment given by Eau Claire County Supervisor Gerald L. Wilkie in 1990[8] that refers to the pre-existing codification of victim rights:

> Though we have a comprehensive set of victim rights, the real problem is that these laws carry little weight . . . . A constitutional amendment is important because it would permanently ensure the rights will be honored and it will give our courts a constitutional basis for recognizing the victim's interest.

*Id.* at 4 (citation omitted). As Article I, Section 9m of the Wisconsin Constitution was adopted to give weight to Chapter 950 and parallels that statutory scheme's structure, our conclusion that the opening sentence of Article I, Section 9m of the Wisconsin Constitution was meant to be a statement of purpose, set apart from and then followed by the enumeration of the specific enforceable rights crime victims are afforded in the second sentence, is further reinforced.

---

*Cole,* 2003 WI 112, ¶ 36 n.12, 264 Wis. 2d 520, 665 N.W.2d 328. Further, the LRB's analyses are entitled to consideration because of its legal expertise. *Id.*

[8] Our precedent supports consideration of a statement made contemporaneous to the time of drafting to ascertain the intent behind a constitutional provision. *See Wagner v. Milwaukee County Election Comm'n,* 2003 WI 103, ¶ 62, 263 Wis. 2d 709, 666 N.W.2d 816.

¶ 23. We turn next to the legislature's earliest interpretation of Article I, Section 9m of the Wisconsin Constitution, as manifested in 1997 Wis. Act 181, the first significant law passed regarding the rights of crime victims following the amendment's adoption. With 1997 Wis. Act 181, the legislature retained the pre-amendment statutory structure of providing for rights in detail in a provision entitled "Basic bill of rights for victims and witnesses." Wis. Stat. § 950.04. Further, 1997 Wis. Act 181 created a subsection at § 950.04(1v) entitled "Rights of victims," which enumerated crime victim rights, none of which make reference to fairness, dignity or respect for privacy. *See* 1997 Wis. Act 181, § 65. Instead, the legislature retained the broad language referring to fairness and dignity in the provision entitled "Legislative intent" at Wis. Stat. § 950.01.

¶ 24. Moreover, subsequent to the adoption of 1997 Wis. Act 181, the LRB explained that Article I, Section 9m of the Wisconsin Constitution "recognizes specified privileges and protections for crime victims and directs the legislature to provide remedies for violations of those rights." Legislative Briefs, *Rights of Crime Victims and Witnesses,* LB-98–3, at 1 (May 1998). Thus, the amendment apparently was intended to require remedies, such as the private reprimand at issue in this case, only for violations of the "privileges and protections" enumerated in the second sentence of Article I, Section 9m of the Wisconsin Constitution. *See id.* The LRB further noted that 1997 Wis. Act 181 lists "the rights of crime victims as protected by the Wisconsin Constitution and statutory law" in Wis. Stat. § 950.04(1v), *id.,* which, because § 950.04(1v) does not list rights of fairness, dignity or respect for privacy, further supports our conclusion.

233

¶ 25. The LRB's analysis of Engrossed 1997 Assembly Bill 342,[9] which created 1997 Wis. Act 181, also suggests that the legislature did not interpret Article I, Section 9m of the Wisconsin Constitution to provide a separate enforceable right to fairness, dignity and respect for privacy. The LRB's analysis lists the rights that the state constitution provides to crime victims, without including the right to fairness, dignity and respect for privacy in the list. *See* Legislative Reference Bureau Analysis of Engrossed 1997 A.B. 342.

¶ 26. In sum, based on our examination of the plain meaning of Article I, Section 9m of the Wisconsin Constitution, which is affirmed by the history of and the legislature's earliest interpretation of that amendment, we conclude that the first sentence of Article I, Section 9m of the Wisconsin Constitution does not provide a self-executing right that the Board is empowered to enforce via private reprimand pursuant to Wis. Stat. § 950.09(2)(a). However, we recognize that crime victims, by virtue of the crimes they suffer, experience profound tragedy before they encounter the criminal justice system. While every act of insensitivity towards a crime victim may not constitute a violation of a right enforceable under § 950.09(2)(a), we believe that justice requires that all who are engaged in the prosecution of

---

[9] The LRB's "analysis of a bill is printed with and displayed on the bill when it is introduced in the legislature." *State v. Douangmala,* 2002 WI 62, ¶ 30, 253 Wis. 2d 173, 646 N.W.2d 1 (citing Wis. Stat. § 13.92(1)(b)2; *see Badger State Bank v. Taylor,* 2004 WI 128, ¶ 42 n.39, 276 Wis. 2d 312, 688 N.W.2d 439 (citing Wis. Stat. § 13.92(1)(b)2). As such, the LRB's analysis indicates legislative intent. *See Cole,* 264 Wis. 2d 520, ¶ 36 n.12; *State v. Gribble,* 2001 WI App 227, ¶ 72, 248 Wis. 2d 409, 636 N.W.2d 488.

crimes make every effort to minimize further suffering by crime victims. Accordingly, we encourage officials within the criminal justice system, including prosecuting attorneys and their staffs, to establish effective lines of communication and good rapport with crime victims to the furthest extent possible.

¶ 27. Moreover, this holding is not to be construed as rendering the first sentence of Article I, Section 9m of the Wisconsin Constitution without meaning or to minimize the importance of the rights of crime victims in this state. Rather, the first sentence of Article I, Section 9m of the Wisconsin Constitution is a constitutional mandate. It articulates this State's policy regarding the treatment of crime victims. It also functions to guide Wisconsin courts' interpretations of the state's constitutional and statutory provisions concerning the rights of crime victims.

## III. CONCLUSION

¶ 28. The first sentence of Article I, Section 9m of the Wisconsin Constitution states: "This state shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy." We recognize that according crime victims fairness, dignity and respect is very important to a just enforcement of the criminal code of the State of Wisconsin. The legislature has recognized the importance of victims' rights as well, by enacting Wis. Stat. § 950.04. However, because we conclude that this constitutional provision is a statement of purpose that describes the policies to be promoted by the State and does not provide an enforceable, self-executing right, we affirm the circuit court decision reversing the private reprimand of District Attorney

Patrick Schilling issued by the Crime Victims Rights Board under Wis. Stat. § 950.09(2)(a).

*By the Court.*—The decision of the circuit court is affirmed.