*280 ¶ 44.
SHIRLEY S. ABRAHAMSON, J.
{concurring). The instant case traverses the Open Meetings Law and public education. The Open Meetings Law[1] reflects Wisconsin's deep commitment to open and transparent government.[2] Education is a key constitutional function of Wisconsin government. Wis. Const. Art. X.
¶ 45. Our democratic system of government — as well as the well-being of each person in this state and the sound functioning of our economic system — depends on a well-educated population. "Wisconsin students have a fundamental right to an equal opportunity for a sound basic education. An equal opportunity for a sound basic education is one that will equip students for their roles as citizens and enable them to succeed economically and personally." Vincent v. Voight, 2000 WI 93, ¶ 3, 236 Wis. 2d 588, 614 N.W.2d 388.
¶ 46. Parental and public involvement in education is, in my opinion, indispensable, and is legislatively protected by the Open Meetings Law. It is not, however, in the parents' or public's interest to make every collaborative decision made by educators subject to the strictures of the Open Meetings Law.[3] The *281 application of the Open Meetings Law to education (or any other government function) is not without limits.
¶ 47. The legislative declaration of policy in the Open Meetings Law states in full as follows:
In recognition of the fact that a representative government of the American type is dependent upon an informed electorate, it is declared to be the policy of this state that the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business.
Wis. Stat. § 19.81(1) (emphasis added).[4]
¶ 48. Indeed the Open Meetings Law conveys limits. The legislature intended the Law to be construed liberally but not so that it impedes the functioning of government. On the one hand, the legislature's declaration of policy explicitly states: The policy of the state is that the public have the fullest and most complete information regarding the affairs of government. On the other hand, the legislature's declaration of policy also proclaims a countervailing concern and limitation: The Open Meetings Law prevails "as is compatible with the conduct of governmental business."
¶ 49. Both aspects of the legislative policy statement should guide this court's interpretation and application of the Open Meetings Law in the instant case. Government operations should be open and transparent to the fullest extent possible. But, the Open Meetings Law should not be interpreted to apply *282 to every meeting between administrators and employees and others to discuss how to implement specific policies or programs or how to do their day-to-day jobs. These kinds of meetings take place routinely, and as the Department of Justice has advised: "They cannot be made subject to the open meetings law because to do so would make it impossible to carry out the day-to-day business of government."[5]
¶ 50. To distinguish between these two kinds of meetings under the Open Meetings Law is the difficult issue presented.
¶ 51. The importance of this case to the public and to school officers and employees for the transparent and effective operations of a school system is evident from the numerous briefs the court has received from many stakeholders:
• The parent (John Krueger) has submitted briefs;
• The Appleton Area School District Board of Education and Communication Arts 1 Materials Review Committee have jointly submitted a brief;
*283 • The Wisconsin Department of Justice has submitted a non-party amicus brief;[6]
• The Wisconsin Freedom of Information Council, the Wisconsin Newspaper Association, and the Wisconsin Broadcasters Association have jointly submitted a non-party amicus brief; and
• The Wisconsin Counties Association, the League of Wisconsin Municipalities, the Wisconsin Association of School Business Officials, the Wisconsin Association of School Personnel Administrators, the Wisconsin Association of School Boards, the Wisconsin Council for Administrative Services, the Association of Wisconsin School Administrators, and the Wisconsin Association of School District Administrators have jointly submitted a non-party amicus brief.
f 52. All the briefs, including the Department of Justice's brief, agree that this court's guidance is needed to develop the definition of "governmental body" in the Open Meetings Law. They agree that more clarity is needed than is currently provided by the Department of Justice's formal and informal communications. Clarity is needed because government functions best when it has clearly defined and uniformly applicable standards.
¶ 53. The briefs are, however, far from agreement as to what the court's guidance should be, even when they agree on the bottom line, that is, even when they agree whether CAMRC is or is not a governmen *284 tal body subject to the Open Meetings Law.[7] (I shall refer to CAMRC as the Review Committee.)
¶ 54. I focus, as the majority opinion and briefs do, on the word "create" in Wis. Stat. § 19.82(1) as the significant word in the instant case in determining whether the Review Committee fits within the definition of "governmental body" in the Open Meetings Law. The definition of "governmental body" is important because the Open Meetings Law applies to every meeting of a governmental body. Wis. Stat. § 19.83(1). "Governmental body" is defined in § 19.82(1) as follows:
(1) "Governmental body" means a state or local agency, board, commission, committee, council, department or public body corporate and politic created by constitution, statute, ordinance, rule or order .... (Emphasis added.)
¶ 55. Whether the Review Committee is a governmental body subject to the Open Meetings Law is a close call for me. Indeed, at oral argument John Krueger's counsel often stated in response to questions from the court posing hypotheticals: "Line drawing is very difficult."
¶ 56. I am not persuaded by the parent's arguments that a rule or order created the Review Committee. The best that can be said for the parent's position is that the "creation" in the instant case may be hazy.
¶ 57. The Department of Justice's Wisconsin Open Meetings Law Compliance Guide (Nov. 2015) at 6 recommends that "[a]ny doubts as to the applicability *285 of the open meetings law should be resolved in favor of complying with the law's requirements." I do not necessarily agree with this recommendation. It fails to recognize the legislature's countervailing interests of transparency and effective government operations. Furthermore, the parent in the instant case had access to the work of the Review Committee through his open records requests, and he had the opportunity to make his suggestions heard by the Review Committee.
¶ 58. Moreover, and significantly, an important issue at this stage of the instant case is not merely the label pinned on the Review Committee but rather the next step should the majority opinion declare that the Review Committee was a governmental body subject to the Open Meetings Law. The parent's brief does not request that the acts of the Review Committee be voided under Wis. Stat. § 19.97(3).
¶ 59. I do not join the majority opinion for several reasons.
| 60. First, the majority opinion gives short shrift to Wis. Stat. § 19.81(1), the legislative policy requiring transparent government "as is compatible with the conduct of governmental business." The majority opinion seems to read this aspect of the legislative policy statement out of the Open Meetings Law, or at the least gives it little or no weight in interpreting the Open Meetings Law. Majority op., ¶ 42.
¶ 61. Yet a court looks at a statement of legislative policy as an intrinsic guide to meaning. Schilling v. Crime Victim Rights Bd., 2005 WI 17, ¶ 14, 278 Wis. 2d 216, 692 N.W.2d 623; Wisconsin's Environmental Decade, Inc. v. P.S.C., 69 Wis. 2d 1, 18, 230 N.W.2d 243 (1975); Letter from Assistant Attorney General Mary Woolsey Schlaefer to Jim Pepelnjak of the *286 Milwaukee Journal Sentinel Inc. (June 8, 1998); Wisconsin Bill Drafting Manual 2017-2018, 7.02.
¶ 62. Second, I disagree with the majority opinion's conclusion at ¶ 33 that the word "rule" in Wis. Stat. § 19.82(1) should be given the dictionary definition that appears in the 1992 version of the American Heritage Dictionary. According to the majority opinion, the definition of " 'rule' includes "an authoritative, prescribed direction for conduct, especially one of the regulations governing procedure in a legislative body." Majority op., ¶ 33.[8]
¶ 63. The statute, Wis. Stat. § 19.82(1), defines "governmental body," inter alia, as a "committee" that is "created by constitution, statute, ordinance, rule or order."[9] Each of the words in the list beginning with *287 the word "constitution" is used in common parlance, but each is used in the statute in a technical, legal sense. Each describes a written, formal document enacted as required by law. Why would the legislature switch in midsentence and not use the words "rule or order" in their technical, legal sense? Applying a generally accepted canon of statutory interpretation, I conclude that the legislature did not make a switch in midsentence.
¶ 64. The applicable canon of statutory interpretation is known by the Latin phrase "noscitur a sociis." Translated, the phrase means "it is known by its associates." In other words, the meaning of each word in the string of words of "constitution, statute, ordinance, rule or order" may be known from the words accompanying it.[10]
¶ 65. The words "constitution," "statute," and "ordinance" describe formal, written documents adopted in accordance with requirements set forth in law.
f 66. The Wisconsin Department of Justice's Wisconsin Open Meetings Law Compliance Guide (Nov. 2015) at 2 corroborates that the words "constitution," "statute," and "ordinance" refer to legal documents under Wisconsin law, stating:
The words "constitution," "statute," and "ordinance," as used in the definition of "governmental body" refer to the constitution and statutes of the State of Wisconsin and to ordinances promulgated by a political subdivision of the state.[11]
*288 ¶ 67. The words "rule" and "order" can be interpreted in a number of ways. Indeed the briefs offer several alternatives.[12]
*289 ¶ 68. It seems most reasonable to me to conclude that the legislature would use the words in this string uniformly in their legal meaning in Wisconsin law.[13]
f 69. The majority opinion disagrees. The majority opinion's analysis of the word "rule," as well as its refusal to consider the legislative policy section (see 1¶ 47-48, 60-61, supra) in interpreting the Open Meetings Law, is at odds with the analysis this same majority of justices recently set forth in Wisconsin Carry, Inc. v. City of Madison, 2017 WI 19, ¶¶ 19-20, 373 Wis. 2d 543, 892 N.W.2d 233. In Wisconsin Carry, the majority stated: "We are not merely arbiters of word choice. . . . We find [plain] meaning in the statute's text, context, and structure . . . ."
f 70. I recognize that the Department of Justice has, without reference to the canon of noscitur a sociis or any other authority or rationale, interpreted the phrase "rule or order" in accordance with common and approved usage and as including "any directive, formal or informal, creating a body and assigning it duties."[14] Unfortunately, the Department's interpretation of the *290 word "rule" does not, as is demonstrated in the briefs, provide sufficient clarity and guidance.
¶ 71. Why would the legislature require anything less for a "rule or order" than a formal written document promulgated by an appropriate entity? The Department of Justice has an answer that should be considered but it is not totally satisfactory. The Department of Justice is concerned that requiring a formal document would allow an entity to evade the Open Meetings Law by adopting informal processes. The Department of Justice explains:
If a formal order were required, the open meetings law might be evaded by the creation of "informal" bodies. Therefore, the interpretation that the open meetings law does not require that the order be formal is consistent with the statement by the Florida Supreme Court that the sunshine law "should be construed so as to frustrate all evasive devices."
78 Wis. Op. Atty. Gen. 67, 69 (quoting Wood v. Marston, 442 So. 2d 934, 940 (Fla. 1983)).
¶ 72. I strongly agree with the Department of Justice that the consequences of an interpretation matter, and a consequence like evasion of the Open Meetings Law should be considered and prevented.[15] But in an attempt to prevent evasion, the Department *291 of Justice's definition of "rule or order" raises two basic, serious problems: The Department's definition is not tethered to the text and context in which the words are used in the Open Meetings Law and does not provide sufficient clarity or guidance. There should be other ways to prevent evasion.
¶ 73. When I look at the text and context in which the words "rule or order" are used, I conclude, in contrast to the majority opinion, that the word "rule" is not defined by the 1992 version of the American Heritage Dictionary. The words "rule or order" derive their meaning from Wisconsin law, not the dictionary.
¶ 74. The third reason I disagree with the majority opinion is that it concludes, majority op., ¶¶ 33-35, that Rule 361 and the Handbook, taken together, created the Review Committee. I agree with the court of appeals that the Review Committee was not created by Rule 361, the Handbook, or any other rule.[16]
¶ 75. Here is how the Review Committee came into existence. A parent requested Superintendent Allinger to create a new and alternative course. Superintendent Allinger then told the District's Assessment, Curriculum and Instruction (ACI) Department to handle the parent's request. The ACI Department head, Kevin Steinhilber, and his immediate subordinate, Nanette Bunnow, created the Review Committee to address the parent's request.
*292 ¶ 76. Steinhilber and Bunnow decided that the Review Committee they created would consider the option of creating an alternative course in response to the parent's request, conduct an evaluation of the curriculum materials for the Communication Arts I course to see if different materials could resolve the parent's concerns, and review the course materials because a Communication Arts I course materials review was overdue and would allow Steinhilber and Bunnow to consider the impact that the impending Common Core requirements would have on the course's materials.[17]
¶ 77. Steinhilber and Bunnow adapted some of the procedures set forth in Rule 361 and the Handbook for the creation and operation of this Review Committee.
¶ 78. The Review Committee was a unique entity created to respond to a unique concern.
¶ 79. The rule on which the majority opinion relies to establish creation of the Review Committee is Rule 361 adopted by the Appleton Area School District Board of Education. The full text of this Rule and an excerpt from the Handbook are in the record and fortunately are attached to the majority opinion. Examining these documents, a reader cannot find a reference to the Review Committee at issue in the instant case in Rule 361 or in the Appleton Area School District Assessment, Curriculum and Instruction Handbook.
¶ 80. Rule 361 delegates the School Board's legal responsibility for all educational materials, that is, for curriculum material selection and revision, to District *293 personnel, namely the District's ACI Department. Rule 361 does not expressly create a committee that handles the selection and revision of educational materials.
¶ 81. Pursuant to Rule 361, the ACI Department developed the Appleton Area School District Assessment, Curriculum & Instruction Handbook to guide its curriculum revision and materials selection. The School Board approved the Handbook. The Handbook delegates authority to the ACI Department to create a committee that handles full curriculum reviews.
¶ 82. The Review Committee in the instant case was not a full curriculum review committee and did not even review the full curriculum for this one course. It reviewed the booklist for this one course. In doing its work, the Review Committee used some curriculum selection and review procedures that it adapted from the Handbook.
¶ 83. In addition to governing full curriculum review, Rule 361 also sets forth a process for handling parental objections to educational materials.
¶ 84. Under Rule 361, a process is set up to address a parent's complaint about educational materials. The complaint would be given to a school official or staff member who is required to try to resolve the issue informally. If informal resolution is ineffective, Rule 361 creates an Educational Materials Review Committee to address the parental concern and sets forth a procedure for the Committee to follow. The Educational Materials Review Committee's recommendation is subject to the Superintendent's review before the School Board ultimately decides whether or not to adopt the recommendation.
1 85. I agree with the court of appeals that the Review Committee at issue in the instant case did not constitute a Rule 361 Educational Materials Review *294 Committee and was not a committee created by Rule 361 or the Handbook to conduct a full curriculum review.[18]
¶ 86. In sum, read carefully and liberally, neither Rule 361 nor the Handbook created the Review Committee at issue in the instant case. The majority opinion seems to agree with my wrap up but concludes that this omission in Rule 361 is not meaningful, stating:
Although [Rule 361 and] the Handbook did not specifically constitute [the Review Committee] by name, [they] authorized review committees ... to exist and to exercise the Board's delegated authority over curriculum review.
Majority op., ¶ 39.[19]
*295 ¶ 87. Fourth, the majority opinion, ¶ 41, states that it need not address the issue of whether the Review Committee was created by an order because it holds that it was created by rule. The meaning of the word "order" was addressed by several of the briefs in this court.[20]
¶ 88. The parent's brief submits the following regarding government officials creating a governmental body by order:
As a practical and legal matter, governing bodies of public entities . . . cannot make every decision; they must delegate their authority downward. In order to exercise those delegated powers, government officials may choose to create a committee to gather information, make a recommendation, or even make a decision. When an official does so, such committees should be subject to the Open Meetings Law .. . ,[21]
¶ 89. The School Board's brief agrees that a government official can set up committees as governmental bodies included within the Open Meetings law. The Board's position is that the official must act within the scope of properly delegated or vested authority. The Board's view is as follows:
[IJndividual government officials, acting within the scope of properly delegated authority, may create a committee subject to Open Meetings Law by delegating authority to the committee which has been law *296 fully charged to the official by the governmental body, in this case the school board. . . . Those committees then, are to be treated as if they had been directly charged by the school board to carry out those functions. . . . The mere creation of a committee by administrative officials is not enough. The requisite conferral of power and authority is required.... While directives from lower level executive officials or employees may qualify, the directive must have been delegated or redelegated. It is not enough for a government official to simply create a group to address a governmental function. Rather, the governmental function must have been delegated or redelegated by the governmental body.[22]
¶ 90. In its non-party brief in this court, the Department of Justice asks the court to describe the creation of a governmental body by order as follows:
A "governmental body" under Wis. Stat. § 19.82(1) can be created by an "order" following a directive from an existing governmental body or delegate that authorizes the creation of a body and assigns it duties. However, the definition of a "governmental body" is rarely satisfied when groups of a governmental unit's employees gather on a subject within the unit's jurisdiction.[23]
¶ 91. The Department of Justice has also opined about an "order" by a government official creating a governmental body under the Open Meetings Law using somewhat different language, as follows:
When an individual government official, acting within the scope of properly delegated authority, creates an *297 advisory body, that body is treated as if it had been created directly by the governmental body with authority over that official.[24]
f 92. The Wisconsin Freedom of Information Council argues in its brief that "order . . . must be broadly construed to include any directive, formal or informal, that creates a body and assigns it duties."[25]
¶ 93. The brief of the Wisconsin Counties Association asks the court to hold that an official
can create a governmental body subject to the [Open Meetings Law] only when the official is acting in the stead of the extant governmental body. There must be an actual, affirmative delegation of authority[26]
f 94. In light of these divergent views and the facts of the instant case, resolving the meaning of "order" is important. The majority opinion's discussion of an "order" might have helped provide clarity and guidance on this difficult question of the meaning of "order."
¶ 95. The fifth reason that I do not join the majority opinion is that its mandate is unclear.
¶ 96. The majority opinion clearly reverses the decision of the court of appeals. Majority op., ¶ 2. It clearly holds that the Review Committee met the definition of "governmental body" under the Open Meetings Law and was subject to its terms. Majority op., ¶ 2. And finally, the majority opinion remands the *298 cause "to the circuit court for further proceedings consistent with this opinion."[27] Nothing in the majority opinion tells the circuit court what further proceedings are to be held consistent with the opinion.
f 97. I agree with the parent's briefs on this topic. The parent's brief states that if this court reverses the decision of the Court of Appeals, this court would also conclude that the Open Meetings Law applied to the Review Committee.[28] According to the parent, if the Open Meetings Law applied to the Review Committee, it is undisputed that the School Board did not comply with the Open Meetings Law. The parent's brief proposes that this court remand the matter to the circuit court with directions to determine costs and attorney fees and to enter judgment in favor of the parent.[29] I agree with this proposal and believe that this is the proper interpretation of the majority opinion's remand.
f 98. Furthermore, it is important to acknowledge that the parent did not and does not request that the Review Committee's actions be voided as a remedy under Wis. Stat. § 19.97(3).[30]
¶ 99. With regard to voiding any action taken at a meeting held in violation of the open meetings law, the Department of Justice has opined on this subject as follows:
Under Wis. Stat. § 19.97(3) a court may void any action taken at a meeting held in violation of the open *299 meetings law if the court finds that the interest in enforcing the law outweighs any interest in maintaining the validity of the action. In the present case, the Task Force's duties were simply to provide recommendations .... The only action that would be "voidable" would be the votes of the Task Force members adopting specific recommendations. Since these were only recommendations to the board and the board has undoubtedly accepted some and rejected others of those recommendations, it is unlikely that any court would void any action taken by the Task Force ....
Letter from Assistant Attorney General Alan Lee to District Attorney Joseph F. Paulus, dated June 8, 2001.
¶ 100. Because of the continuing need for clarity and guidance in the meaning of the phrase "created by rule or order" used in Wis. Stat. § 19.82(1), I suggest that school boards and school officials consider the adoption of formal rules or orders for the creation of governmental bodies by rule or order to be governed by the Open Meetings Law. They should consider in their various functions whether they are acting by rule or order, whether they are creating a governmental body subject to the Open Meetings Law, and whether they are clearly delineating the functions and responsibilities of the entity they create. Their designation is, of course, not dispositive for purposes of the Open Meetings Law but would assist them, school employees, and the public.
f 101. For the reasons set forth, I write separately.
¶ 102. I am authorized to state that Justice ANN WALSH BRADLEY joins this concurring opinion.

 See generally Wisconsin Statutes Chapter 19, Subchapter V entitled Open Meetings of Governmental Bodies, Wis. Stat. §§ 19.81-98.

 State v. Beaver Dam Area Dev. Corp., 2008 WI 90, ¶ 2, 312 Wis. 2d 84, 752 N.W.2d 295.

 "Even though Wisconsin courts have not specifically addressed this issue, the extensive federal case law in this area establishes that parents simply do not have a constitutional right to control each and every aspect of their children's education and oust the state's authority over that subject." Larson v. Burmaster, 2006 WI App 142, ¶ 39, 295 Wis. 2d 333, 720 N.W.2d 134.

 See also Wis. Stat. § 19.31 (providing that the policy of the public records law is to ensure that the public has access to "the greatest possible information regarding the affairs of government and the official acts of those . . . who represent them.") (emphasis added).

 Letter from Assistant Attorney General Mary Woolsey Schlaefer to Jim Pepelnjak of the Milwaukee Journal Sentinel Inc. (June 8, 1998). See also Wisconsin Department of Justice's Wisconsin Open Meetings Law Compliance Guide 7 (Nov. 2015) ("The definition of a 'governmental body' is only rarely satisfied when groups of a governmental unit's employees gather on a subject within the unit's jurisdiction."); Letter from Assistant Attorney General Thomas C. Bellavia to Joe Tylka (June 8, 2005) (the Open Meetings Law does not apply to "meetings of groups of government officials and employees that are not established pursuant to some such informal directive, but that simply meet together on an ad hoc basis in the interest of governmental efficiency . . . .)".

 The Department of Justice's brief did not focus on the facts of the instant case. The Department of Justice did not support either John Krueger or the School Board regarding the application of the Open Meetings Law to the instant case.

 "CAMRC" is used by the majority opinion. CAMRC refers to the Communication Arts 1 Materials Review Committee.

 A single word can have multiple definitions. The American Heritage Dictionary provides well over a dozen formulations of a definition for the word "rule." Likewise, the online version of the Merriam-Webster Dictionary defines "rule" in over a dozen ways. By choosing one definition from the American Heritage Dictionary without explaining why that definition applies, the majority opinion overlooks a court's directive in statutory interpretation: "Many words have multiple dictionary definitions; the applicable definition depends upon the context in which the word is used." State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶ 49, 271 Wis. 2d 633, 681 N.W.2d 110. See also Noffke ex rel. Swenson v. Bakke, 2009 WI 10, ¶ 60, 315 Wis. 2d 350, 383, 760 N.W.2d 156 (Abrahamson, C.J., concurring) ("Dictionaries usually furnish more than one meaning to a word, and a court has to be careful not to select a friendly definition it likes from the many offered without explaining its choice.").

 The Open Meetings Law applies to a "governmental body," which is defined as "a state or local agency, board, commission, committee, council, department or public body corporate and politic created by constitution, statute, ordinance, rule or order. .. ." Wis. Stat. § 19.82(1) (emphasis added).

 Although rules of interpretation serve the court, they are not absolute rulers of a court's interpretation. Boardman v. State, 203 Wis. 173, 176, 233 N.W. 556 (1930) (quoting Benson v. Chicago, St. P., M. & O. Ry. Co., 77 N.W. 798, 799 (Minn. 1899)).

 The word "ordinance" appears more than 300 times in the Wisconsin Statutes. See, e.g., Wis. Stat. § 61.50 relating to ordinances by villages, and § 62.11 relating to ordinances by cities.
*288 The court defined "ordinances" as follows in Wisconsin Carry, Inc. v. City of Madison, 2017 WI 19, ¶ 25, 373 Wis. 2d 543, 892 N.W.2d 233: "[Ordinances are municipal legislative devices, formally enacted, that address general subjects in a permanent fashion."

 Some briefs treat "rule or order" as one-and-the same; other briefs address "order" more specifically. The brief of the Department of Justice addresses only the word "order."
The parent's brief explains that a "rule or order" may include "any directive, formal or informal, creating a body and assigning it duties" that "come[s] from governmental bodies, presiding officers of governmental bodies, or certain government officials, such as county executives, mayors, or heads of a state or local agency, department or division" (that is, "a hierarchical top-down creation of a group"), but only if "the possibility exists that the real decision-making will happen at the committee meetings and be rubber-stamped by the governing board." Plaintiff-Appellant-Petitioner's Brief and Appendix at 19-20 (internal citations and quotations omitted).
The School Board's brief seems to agree that a "rule" may be formal or informal, but asserts that the creation must be done through an "explicit delegation of authority." Defendant-Respondents' Brief at 19.
The brief of the Wisconsin Freedom of Information Council explains that the "[t]he terms 'rule or order' as used in Section 19.82 have been broadly construed to include any directive, formal or informal, that creates a body and assigns it duties." The Council clarifies that this definition means that "the committee need only have come into being through the agency, participation, or authority of the [rule or order]." Non-Party Brief and Appendix of the Wisconsin Freedom of Information Council et al. at 5, 8.
The Wisconsin Counties Association argues in its brief that the Attorney General's interpretation of "rule or order" that includes informal directives is misplaced and that "the Court should hold that a 'rule or order' is a directive adopted or issued by an existing governmental body in the normal manner *289 by which it does its work. In all [sic] most, if not all, situations this will be adoption by a majority vote. And, such formal directives will be recorded in the minutes of the governmental body." Non-party Brief of Wisconsin Counties Association et al. at 11-12.

 The word "rule" for purposes of state government is defined in Wis. Stat. § 227.01(13) (including 72 exceptions). I could find no definition of "rule" regarding local governmental entities, but the word "rule" is used in the statutes too many times to count relating to rulemaking by local governmental entities.

 Wisconsin Department of Justice's Wisconsin Open Meetings Law Compliance Guide (Nov. 2015) at 2. See also Letter from Assistant Attorney General Thomas C. Bellavia to Joe Tylka (June 8, 2005).
*290 No entity on the list of state or local bodies created by resolution, rule, or order in the Wisconsin Department of Justice's Wisconsin Open Meetings Law Compliance Guide (Nov. 2015) at 3 seems to me to resemble the Review Committee in the instant case.

 Consequences are an important consideration in interpreting a statute. See, e.g., Wisconsin Carry, 373 Wis. 2d 543, ¶ 20 (if an interpretation results in "unreasonable or absurd" consequences, that interpretation may be rejected); Anderson v. Aul, 2015 WI 19, ¶ 114, 361 Wis. 2d 63, 862 N.W.2d 304 (Ziegler, J., concurring) (asserting that the plain meaning *291 analysis includes consideration of consequences of alternative interpretations to avoid unreasonable results).

 "Krueger is unable to direct us to any provision of either authority under which the Review Committee was created." State ex rel. Krueger v. Appleton Area Sch. Dist. Bd. of Ed., No. 2015AP231, unpublished slip op. at ¶ 18 (Wis. Ct. App. June 28, 2016).

 See Appleton Area School District Board of Education, Meeting Minutes (Apr. 23, 2012).

 "[H]ere, neither Board Rule 361.1 procedure was applicable, because Krueger requested creation of an alternate course altogether since, in his opinion, 'to review the existing reading list would have been a waste of time.' There was no established district procedure for requesting an alternative course or responding to such a request. . .. [Steinhilber's and Bunnow's creation of the Review Committee on their own initiative] is similar to the second set of facts addressed in the Tylka letter, at 4, wherein the attorney general's office opined the open-meetings law would not apply." State ex rel. Krueger v. Appleton Area Sch. Dist. Bd. of Ed., No. 2015AP231, unpublished slip op. ¶¶ 20-21 (Wis. Ct. App. June 28, 2016).

 The majority opinion relies on depositions to interpret Rule 361. Is not the interpretation of Rule 361 a question of law for this court, not for the deponents? The parties' briefs in this court argue whether the parent's brief (and therefore the majority opinion) relies on a proper interpretation of the deponents' responses. This is a summary judgment case and the circuit court concluded that no material facts are in dispute.
I note that the majority opinion states repeatedly that the Review Committee was "authorized" by Rule 361, rather than using the statutory language that the Rule "created" the Committee.

 The court of appeals did not address this issue because the parent did not raise it in the circuit court or in his initial appellate brief. State ex rel. John Krueger v. Appleton Area Sch. Dist. Bd. of Ed., No. 2015AP231, unpublished slip op. ¶¶ 22-26 (Wis. Ct. App. June 28, 2016). See majority op., ¶ 41.

 Plaintiff-Appellant-Petitioner's Brief and Appendix at 43.

 Defendant-Respondents' Brief at 35-37 (citations omitted).

 Non-Party Brief and Appendix of the Wisconsin Department of Justice Attorney General Brad D. Schimel at 13.

 Letter from Assistant Attorney General Thomas C. Bel-lavia to Joe Tylka (June 8, 2005).

 Non-Party Brief and Appendix of the Wisconsin Freedom of Information Council et al. at 5.

 Non-party Brief of Wisconsin Counties Association et al. at 15.

 Majority op., mandate line after ¶ 43. •

 Plaintiff-Appellant-Petitioner's Brief (John Krueger) at 54.

 Plaintiff-Appellant-Petitioner's Reply Brief (John Krueger) at 14.

 Plaintiff-Appellant-Petitioner's Reply Brief (John Krueger) at 14, n.3.